32 F.3d 120
 18 Employee Benefits Cas. 2297
 The SHEPPARD & ENOCH PRATT HOSPITAL, INCORPORATED, Plaintiff-Appellant,
v.
TRAVELERS INSURANCE COMPANY; American Telephone & Telegraph
Medical Expense Plan for Retired Employees,
Defendants-Appellees.
 No. 93-2220.
 United States Court of Appeals,
Fourth Circuit.
 Argued April 13, 1994.
Decided Aug. 15, 1994.
 
 ARGUED: Mark Thomas Mixter, Redmond, Cherry & Burgin, P.A., Baltimore, MD, for appellant. Joseph Semo, Reinhart, Boerner, Van Deuren, Norris & Rieselbach, P.C., Washington, DC, for appellees.
 Before NIEMEYER, Circuit Judge, SPROUSE, Senior Circuit Judge, and RESTANI, Judge, United States Court of International Trade, sitting by designation.
 Affirmed by published opinion. Senior Judge SPROUSE wrote the opinion, in which Judge NIEMEYER and Judge RESTANI joined.
 OPINION
 SPROUSE, Senior Circuit Judge:
 
 
 1
 Denzil G. Bolyard, a retired employee of American Telephone & Telegraph ("AT & T"), was hospitalized in Sheppard & Enoch Pratt Hospital, Inc. ("the Hospital") for a period of sixteen months due to a psychiatric disability. The Travelers Insurance Company ("Travelers"), the administrator of AT & T's Medical Expense Plan for Retired Employees (the "Plan"), approved coverage of the costs of only six months of Bolyard's hospitalization. The Hospital, as assignee of Bolyard, brought this action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. Sec. 1132(a)(1), to recover payment of the full sixteen-month period. The district court granted summary judgment to Travelers and the Plan, and we affirm.
 
 
 2
 * The facts are largely undisputed. Denzil G. Bolyard was an employee of AT & T when he retired in 1984 due to a psychiatric disability. As a retiree, he became a member of the Plan. During the years leading up to his retirement and, indeed, throughout most of his adult life, Bolyard has suffered from severe obsessive-compulsive behavioral disorders. Since 1971, these disorders have caused numerous troublesome episodes and hospitalizations. In 1988, Bolyard attacked his wife and threatened a police officer with a knife. This incident led to Bolyard's staying in two different psychiatric hospitals before his eventual transfer and admittance to the Hospital on March 7, 1989. He spent sixteen months there.
 
 
 3
 The Plan excludes coverage for "[c]harges for any care not certified by the covered persons [sic] doctor and the Carrier/Claims Administrator as medically necessary for the treatment of the covered persons [sic] condition." Because Medicare covered Bolyard's initial hospitalization, he was exempted from the Plan's requirement that he seek pre-certification for his admittance. On February 9, 1990, however, Bolyard submitted a claim to the Plan's third-party administrator, Travelers,[1] seeking coverage for the period of treatment that had not been paid by Medicare. Bolyard's medical records were collected and forwarded by Travelers' HealthCheck unit[2] to its consultant, Dr. Matthew R. Friedman, who reviewed them and determined that only the first 60 days of Bolyard's hospitalization were medically necessary. Based on Friedman's report, the Plan informed Bolyard that charges incurred after the sixtieth day of hospitalization (that is, after May 5, 1989) would not be eligible for reimbursement because they had not been medically necessary.
 
 
 4
 On July 5, 1990, Bolyard sought reconsideration of that ruling. The patient's medical records and additional materials, principally a letter from Drs. Paul Lazor and John Boronow, Bolyard's treating physicians at the Hospital, were forwarded to Dr. Michael A. Gureasko, another Travelers consultant. Based on this information, Gureasko certified that six of the sixteen months of the hospitalization were medically necessary for purposes of Plan coverage, and the Plan so informed Bolyard and the Hospital.
 
 
 5
 As the assignee of Bolyard, the Hospital brought suit in federal district court seeking to compel the Plan to extend coverage for Bolyard from six months to sixteen months as well as damages for breach of fiduciary duty. After discovery, the district court granted summary judgment to Travelers and the Plan, holding that the Hospital failed to raise a genuine issue of material fact as to whether the Plan's denial of coverage was an abuse of discretion. The Hospital appeals, contending that the district court applied the incorrect standard of review and that, even under the standard applied, erred in granting summary judgment to the Plan.
 
 II
 
 6
 In considering a grant of summary judgment, we, of course, review the district court's decision de novo, employing the same standards applied by the district court. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1172, 117 L.Ed.2d 417 (1992).
 
 
 7
 The Hospital first challenges the district court's choice of the standard under which it reviewed Travelers' decision. It argues that the administrator's interpretation of the Plan's "medically necessary" provision should have been reviewed de novo by the district court. Our resolution of this issue is governed by the principles announced in Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). There, the Supreme Court held:
 
 
 8
 [T]he validity of a claim to benefits under an ERISA plan is likely to turn on the interpretation of terms in the plan at issue. Consistent with established principles of trust law, we hold that a denial of benefits challenged under 29 U.S.C. Sec. 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.
 
 
 9
 Id. at 115, 109 S.Ct. at 956-57.
 
 
 10
 We have interpreted the Bruch holding to mean that "[t]he threshold question for reviewing courts is now whether the particular plan at issue vests in its administrators discretion either to settle disputed eligibility questions or to construe 'doubtful' provisions of the plan itself. If the plan's administrators are indeed entitled to exercise discretion of that sort, reviewing courts may disturb the challenged denial of benefits only upon a showing of procedural or substantive abuse." de Nobel v. Vitro Corp., 885 F.2d 1180, 1186 (4th Cir.1989). We went on to explain that, under such circumstances, our review will be governed by the "abuse of discretion" standard. Id. at 1187. We also said: "As the Bruch Court made plain, what follows from the applicability of the abuse of discretion standard is that the trustee's interpretation of relevant provisions of the plan documents--hence the challenged denial of benefits--'will not be disturbed if reasonable.' " Id. (quoting Bruch, 489 U.S. at 111, 109 S.Ct. at 954).
 
 
 11
 In the case at hand, Bolyard's eligibility for coverage, of course, rests on the meaning of "medically necessary" treatment. That language is not further defined in the Plan. The Plan administrator and AT & T, however, are given conclusive authority to interpret questions of coverage. Section A, part 2, of the Plan provides:
 
 
 12
 The Plan of benefits will be provided under contracts between the Company and Administrator or Administrators selected by the Company or by the Company directly. Such contracts shall include the substance of Sections B through J of this Plan, and, at the Company's discretion, shall be administered by the respective Plan Administrator or Administrators or the Company, which will determine coverage and benefits and other questions arising thereunder. All determinations of the Plan Administrator or the Company, as applicable, under the Plan shall be conclusive and binding.
 
 
 13
 Likewise, the Summary Plan Description provided to Plan members states that the Plan administrator has "the exclusive right to interpret the provisions of the plan so their decision is conclusive and binding."
 
 
 14
 The Hospital, however, points to other language in the Summary Plan Description to support its argument that the meaning of the term "medically necessary" has not been left solely to interpretation by Travelers: "[Coverage is not provided for] any care not certified by your doctor and the carrier/claim administrator as medically necessary for the treatment of your condition." The Hospital argues that the Plan's decision to give a role to the patient's doctor means that the determination of whether treatment is "medically necessary" has not been left to the discretion of the Plan administrator. It further contends that this clause is controlling because when there is an inconsistency between plan language and a plan summary, the plan summary controls. See Aiken v. Policy Management Systems, 13 F.3d 138, 140 (4th Cir.1993).
 
 
 15
 The Plan and its summary description, however, both clearly give the Plan and Travelers the exclusive authority "to determine coverage and benefits" and "to interpret the provisions of the plan." Even under the language relied on by the Hospital, a certification by the member's physician that treatment is medically necessary does not automatically entitle the member to coverage; approval by the Plan administrator is still necessary. This provision therefore does not strip Travelers of its authority to make eligibility determinations, and the deferential "abuse of discretion" standard of review is appropriate. Lockhart v. UMWA 1974 Pension Trust, 5 F.3d 74, 77 (4th Cir.1993); Boyd v. Trustees of the United Mine Workers Health & Retirement Funds, 873 F.2d 57, 59 (4th Cir.1989).
 
 III
 
 16
 The Hospital next asserts that, under either standard of review, the district court erred by refusing to consider evidence that was not before the Plan when it made its decision. Bolyard's treating physician, Dr. Boronow, submitted a lengthy letter to the Plan which was considered by Dr. Gureasko in conducting his review of Bolyard's case. The Hospital asserts that if the district court had considered certain materials relied on by Dr. Boronow to prepare his letter and had taken into account Dr. Boronow's affidavit, even though those materials were not available to Dr. Friedman or Dr. Gureasko, it would have recognized a genuine dispute as to material facts.
 
 
 17
 In Berry v. Ciba-Geigy, 761 F.2d 1003 (4th Cir.1985), a pre-Bruch case, we addressed the propriety of a district court's consideration of extrinsic evidence in conducting a review of a plan administrator's decision under the deferential standard of review.[3] There, we stated, "The sole question before the court was whether the plan fiduciary's decision was arbitrary and capricious[4].... This required the court to consider only the record before [the plan fiduciary] at the time he reached his decision." Id. at 1007. See also Jett v. Blue Cross & Blue Shield of Ala., 890 F.2d 1137, 1139 (11th Cir.1989) ("When conducting a review of an ERISA benefits denial under an arbitrary and capricious standard ... the function of the court is to determine whether there was a reasonable basis for the decision, based upon the facts as known to the administrator at the time the decision was made.") (citing Berry, 761 F.2d at 1007). As we reiterated in de Nobel, the district court should not disturb a benefits determination by a trustee authorized to exercise its discretion unless the decision was unreasonable. de Nobel, 885 F.2d at 1187. We continue to adhere to the view expressed in Berry that an assessment of the reasonableness of the administrator's decision must be based on the facts known to it at the time. Thus, although it may be appropriate for a court conducting a de novo review of a plan administrator's action to consider evidence that was not taken into account by the administrator, the contrary approach should be followed when conducting a review under either an arbitrary and capricious standard or under the abuse of discretion standard.
 
 
 18
 Viewing the Hospital's argument as a claim that Travelers lacked sufficient information to make a reasonable decision, we arrive at the same result. The Hospital asserts that if Drs. Friedman and Gureasko had taken into account all the information considered by Dr. Boronow and proffered in his affidavit, they would have advised Travelers differently, and it, in turn, may have found Bolyard's treatment "medically necessary." We stated in Berry, however, "If the court believe[s] the administrator lacked adequate evidence, the proper course [is] to remand to the trustees for a new determination ... not to bring additional evidence before the district court." Berry, 761 F.2d at 1007 (internal quotation and citations omitted). The district court's decision to remand vel non will not be disturbed in the absence of an abuse of discretion. See also Quesinberry, 987 F.2d at 1025 n. 6 (remand after de novo review may be appropriate in the discretion of the district court).
 
 
 19
 Bolyard's case was first reviewed by Dr. Friedman. He relied on Bolyard's medical records, an admission note, and a Diagnostic Summary and Master Treatment Plan to conclude that Bolyard required ongoing treatment but not ongoing in-patient care. Dr. Gureasko performed a second review based on the materials considered by Dr. Friedman, as well as additional materials provided by Bolyard. These additional materials contained the letter from Drs. Boronow and Lazor which set forth in detail their diagnosis of Bolyard and recommended treatment. After reviewing the deposition testimony of Drs. Friedman and Gureasko and the record before those doctors, the district court ruled that the record was adequate to support Travelers' decision and declined to remand the case for further deliberation. We can discern no basis for finding an abuse of discretion.IV
 
 
 20
 The Hospital next argues that, even considered deferentially, the administrator's denial of full coverage was an abuse of discretion. We disagree. In determining whether a plan administrator abused its discretion, we consider a number of factors, including:
 
 
 21
 whether the administrator's interpretation is consistent with the goals of the plan; whether it might render some language in the plan documents meaningless or internally inconsistent; whether the challenged interpretation is at odds with the procedural and substantive requirements of ERISA itself; whether the provisions at issue have been applied consistently; and of course whether the fiduciaries' interpretation is contrary to the clear language of the [p]lan.
 
 
 22
 The dispositive principle remains, however, that where plan fiduciaries have offered a reasonable interpretation of disputed provisions, courts may not replace [it] with an interpretation of their own--and therefore cannot disturb as an abuse of discretion the challenged benefits determination.
 
 
 23
 de Nobel, 885 F.2d at 1188 (internal citations and quotations omitted). The Hospital urges that both the substance of the Plan's decision and the procedures used to make it would fully support a conclusion that the decision was an abuse of the administrator's discretion.
 
 
 24
 In this context, it first contends that it was unreasonable for the Plan administrator to favor the recommendations of its medical consultants, who relied exclusively on "cold" medical records and reports, over the advice of Bolyard's treating physicians. The Hospital relies on this court's opinions involving review of disability determinations under the Social Security Act, 42 U.S.C.Sec. 416. In those cases, we have held that the opinion of a doctor who never examined or treated the patient cannot serve to refute the conclusions of the patient's treating physician. See, e.g., Martin v. Secretary of Dep't of Health, Educ. & Welfare, 492 F.2d 905, 908 (4th Cir.1974). Social Security Act disability cases, however, involve an assessment of whether a claimant is in fact disabled, and the judgment of the treating doctor is crucial to making that determination. Here, the very judgment of the treating doctor as to the medical necessity of the prescribed treatment is being assessed by the Plan administrator and its medical consultants. To require the Plan to give conclusive weight to the opinion of the treating physician would deprive it of its role in determining medical necessity.
 
 
 25
 The Hospital also asserts that the inconsistency between the opinions of Drs. Friedman (60 days of in-patient care was medically necessary) and Gureasko (six months was medically necessary) demonstrate that Travelers' ultimate conclusion that six months would be covered was unreasonable. Again, we do not agree. True, we said in de Nobel that the reasonableness of a fiduciary's interpretation of plan provisions depends in part on "whether the provisions at issue have been applied 'consistently.' " de Nobel, 885 F.2d at 1188. There, however, we were speaking of inconsistent applications of the Plan to members suffering from the same or similar ailments. See Lockhart, 5 F.3d at 78, 80. The Plan's decision to adopt the recommendation of Dr. Gureasko (who considered more information than did Dr. Friedman), does not demonstrate that type of inconsistency.
 
 
 26
 The Hospital next argues that Travelers' participation in the benefits decision was tainted by a conflict of interest. In Bruch, the Supreme Court counseled, "[I]f a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.' " Bruch, 489 U.S. at 115, 109 S.Ct. at 957 (quoting Restatement (Second) of Trusts Sec. 187, comment d (1959)). See also Doe v. Group Hospitalization, 3 F.3d 80, 87 (1993). That Bruch principle, however, has no application here. The AT & T Plan is fully funded and self-insured. Travelers serves solely as a third-party administrator. It does not act as an insurer of the Plan; therefore, neither it nor the doctors it retained had any direct financial stake in the determination of Bolyard's eligibility.
 
 
 27
 Next, in challenging the procedures surrounding the Plan's decision, the Hospital contends that the Plan violated ERISA regulations which require that a claim be processed within 90 days of its submission, 29 C.F.R. Sec. 2560.503-1(e)(1), (3) (1993), and that a denial of benefits provide the specific reason for the denial and procedures for review. 29 C.F.R. Sec. 2560.503-1(f) (1993). Bolyard's initial request for coverage was made on or about February 9, 1990. The Plan's initial determination that only Bolyard's first sixty days of hospitalization were medically necessary was issued on June 11, 1990, well beyond the 90 days specified in the federal regulations. However, those regulations also provide that a failure to give notice within a reasonable period of time is to be deemed a denial of a claim which permits the claimant to pursue internal review procedures. 29 C.F.R. Sec. 2560.503-1(e)(2). Bolyard's request for internal review on July 5, 1990, led to Dr. Gureasko's recommendation that six months of his hospitalization be covered. We agree with the district court that the beneficial review received by Bolyard cured the earlier violation of the 90-day requirement.
 
 
 28
 We likewise find that Bolyard was not prejudiced by the Plan's failure to provide specific reasons as to why the full sixteen months of hospitalization were not medically necessary. The June 11, 1990, letter specified that the absence of medical necessity was the reason full coverage was initially denied. Bolyard sought review of that determination and included a letter from his physicians which explained from their perspective why his treatment was indeed medically necessary. While the Plan's notice of denial could have been more thorough, it substantially complied with the applicable ERISA regulations. See Halpin v. W.W. Grainger, Inc., 962 F.2d 685, 690 (7th Cir.1992) ("In determining whether a plan complies with the applicable regulations, substantial compliance is sufficient.").
 
 
 29
 Finally, we reject the Hospital's contention that the Plan should be estopped from denying coverage because it delayed its decision with full knowledge that Bolyard remained at the Hospital with an expectation that his full stay would be covered. An estoppel arises when "one person makes a definite misrepresentation of fact to another person having reason to believe that the other will rely upon it and the other in reasonable reliance upon it does an act...." Heckler v. Community Health Servs. of Crawford, 467 U.S. 51, 59, 104 S.Ct. 2218, 2223, 81 L.Ed.2d 42 (1984) (quoting Restatement (Second) of Torts Sec. 894(1) (1979)). There is no evidence of any misleading statements or conduct by the Plan that would have led a reasonable person to rely on the delay as a manifestation of intent to provide coverage.
 
 V
 
 30
 For the above reasons, the judgment of the district court is affirmed.
 
 
 31
 AFFIRMED.
 
 
 
 [1]
 The AT & T Plan is a self-funded plan; therefore, Travelers serves as a third-party administrator, not an insurer
 
 
 [2]
 The HealthCheck unit is responsible for reviewing hospitalizations to determine whether they qualify for Plan coverage
 
 
 [3]
 In Quesinberry v. Life Ins. Co. of North America, 987 F.2d 1017, 1025 (4th Cir.1993), we held that, in conducting a de novo review in appeals of benefit determinations under ERISA, it is sometimes proper for a district court to consider evidence that was not before the administrator. We had no reason there to discuss the consideration of extraneous evidence where district courts are limited to a deferential review of an administrator's decision. Berry, however, was discussed favorably in a parallel context
 
 
 [4]
 In Lockhart v. UMWA 1974 Pension Trust, 5 F.3d 74, 77 n. 5 (4th Cir.1993), we found it was unnecessary to decide whether, after Bruch, the arbitrary and capricious standard is still viable--holding that the result there would have been the same under either standard. Here, too, we believe the result would be the same whether the abuse of discretion standard and the arbitrary and capricious standard are the same or not; therefore, we likewise need not resolve that issue