**Rob Joseph SUTTON**

v.

**HEARTH & HOME DISTRIBUTORS, INC. EMPLOYEE BENEFIT PLAN, et al.**

v.

**AMERICAN PIONEER LIFE INS. CO., et al.**

Civ. No. L–92–2827.

United States District Court, D. Maryland.

March 31, 1995.

Robert Earl Wilson, Upper Marlboro, MD, and E. James Thompson, Jr., Baltimore, MD, for plaintiff.

Helene Victoria Hedian, Randolph C. Knepper, Marleen B. Miller and Stanford G. Gann, Jr., Baltimore, MD, for defendants; Mitchell H. Stabbe, Washington, DC, for third-party defendant American Pioneer Life Ins. Co.; Carol Saffran–Brinks, Baltimore, MD, for third-party defendant Standard Sec. Life Ins. Co. of New York.

### MEMORANDUM

LEGG, District Judge.

This case arises from defendants' refusal to reimburse plaintiff Robert Sutton for medical expenses he incurred as a result of a tragic diving accident. While Hearth & Home's benefit plan approved payment for disability benefits, it denied Sutton's claim for reimbursement for medical benefits based on a clause in the plan which exempted medical expenses "arising out of an accident or illness due to the use or misuse of alcohol."[1] Sutton claims that this denial of medical benefits constituted a violation of the Employee Retirement Income Security Act of 1974 (ERISA), as amended, 29 U.S.C. 1001 *et seq.*

Sutton brings this action against his employer, Hearth & Home Distributors, Inc., its employee benefit plan, the administration

---

1. This same clause did not apply to disability benefits.

committee of the employee benefit plan and three members of the 1990 administration committee, hereinafter collectively referred to as "Hearth & Home". In turn, Hearth and Home has brought third-party complaints against American Pioneer and Standard Security, its excess loss insurers, seeking indemnification for any adjudged liability to Sutton in excess of $20,000, up to $1,000,-000.

Presently before the Court are four motions for summary judgment:

(1) Plaintiff Robert Sutton's Motion for Summary Judgment against defendants Hearth & Home;

(2) Defendant Hearth & Home's Motion for Summary Judgment against plaintiff, Robert Sutton;

(3) American Pioneer's Motion for Summary Judgment; and

(4) Standard Security's Motion for Summary Judgment.

The arguments have been fully briefed and no hearing is necessary. Local Rule 105.6 (D.Md.). For the reasons set forth below, the Court shall grant, by separate order, the summary judgment motions filed by defendants' Hearth & Home, American Pioneer, and Standard Security. The Court, therefore, shall deny Robert Sutton's motion for summary judgment.

## STATEMENT OF FACTS

The facts can be briefly stated. On June 23, 1990, while employed and insured by Hearth & Home, Sutton was severely injured in a diving accident, rendering him a permanent quadriplegic. During the course of the evening, Sutton had been drinking. First, he attended a wedding reception, and later went to a bar on Kent Island, Maryland. The bar was located on a dock, which contained a wooden railing overlooking the water. Between 11 pm and midnight, Sutton dove head first off the railing into nearby water. He broke his neck and was paralyzed.

Sutton filed a claim with the Plan for reimbursement of his medical bills. The general administration of the Plan is per-

formed by the Employee Benefit Administration Committee ("the Administration Committee"). During 1990, the Administration Committee consisted of the defendants R. Wayne Newsome, Jeanne C. Petersen and Jay Leiken. The Administration committee was authorized to employ agents to perform its duties under the Plan. (Ex. 1 at 58). During 1990, the Administration Committee contracted with Maury, Donnelly & Parr, Inc. ("M.D.P.") as third party administrator for the Plan. M.D.P. had experience in the administration of employee benefit plans. M.D.P. received and processed the claims of persons covered by the Plan. (Petersen Aff. at 1.)

Timothy Morris, an employee of M.D.P., was assigned to handle Sutton's claim. He obtained copies of Sutton's medical records. Throughout the records, there were many references to Sutton's alcohol consumption prior to the accident. The toxicology report indicated that Sutton's blood alcohol level was .112 mg/dl upon his admission to the hospital. When Morris discovered the references to Sutton's alcohol use prior to the accident and the blood alcohol level of .112, he consulted Healthcare Strategies, Inc. for guidance.[2] Healthcare reviewed the medical records and noted that they were replete with references to alcohol consumption. To interpret the "legal significance" of Sutton's alcohol level, Healthcare Strategies contacted the Maryland State Police and obtained from them the current figures at which blood alcohol concentration was deemed to constitute intoxication. A blood alcohol level of .112 was above the statutory presumption of intoxication for the purposes of driving in Maryland. This information was conveyed to Morris.

After reviewing the medical records and consulting with HealthCare, M.D.P. determined that Plaintiffs' medical expenses were not covered by the Plan because they were "due to the use or misuse of alcohol." Morris sent Sutton a letter advising that his claim of benefits was being denied on the basis of an exclusion in the Plan for medical

---

**2.** Healthcare Strategies is a utilization review consultant which provided services to Hearth & Home, through M.D.P. in 1990. (Affidavit of Janice K. Albert at 2).

benefits resulting from the use or misuse of alcohol. (Ex. 6) This clause states:

> Expenses resulting from a claim arising out of an accident or illness due to the use or misuse of alcohol or drugs (other than prescribed) are considered ineligible for reimbursement.

After receiving notice that his claim had been denied, Sutton's counsel sent a letter, requesting additional review of the claim. In the letter, he stated that "It is Mr. Sutton's position that his accident was not as a result of use or misuse of alcohol, but was solely caused by the negligence of the owners of the restaurant where the accident occurred." (Ex. 7). The letter did not further explain Sutton's position.[3]

Morris turned the matter over to Hearth & Home for further review by the Administration Committee. (Morris Aff. at 4). On November 15, 1990, the Administration Committee met to discuss the appeal with its counsel and Arnold Vedrin from Maury, Parr & Donnelly. After discussions, the Administration Committee determined that it had to deny the appeal because Sutton's claim fell within the Alcohol Exclusion of the Plan. By letter dated November 15, 1990, Sutton was advised of the Administration Committee's decision. (Ex. 8) The final decision to deny Sutton's claim was made by Hearth & Home's President, R. Wayne Newsome. Newsome advised Sutton, by letter dated December 19, 1990, that he was in agreement with the decision of the Administration Committee and Timothy Morris to deny the claim. Thus, the Plan has paid no medical benefits to Sutton to date.

If Sutton prevails in his claim, Hearth & Home faces liability for a maximum of $1,000,000 in accordance with the Plan. Hearth & Home was insured for excess liability by American Pioneer in 1990 and 1991, and by Standard Security in 1992. Thus, Hearth and Home has brought third-party complaints against American Pioneer and Standard Security, seeking indemnification for any adjudged liability to Sutton in excess of $20,000, up to $1,000,000.

## I. Standard for Summary Judgment

The court may grant summary judgment when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). "The summary judgment inquiry thus scrutinizes the [moving party's] case to determine whether the [non-moving party] has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial." *Mitchell v. Data General Corp.,* 12 F.3d 1310, 1316 (4th Cir.1993). In determining whether a genuine issue of material fact exists, the Court views the facts, and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. *Pulliam Inv. Co. v. Cameo Properties,* 810 F.2d 1282, 1286 (4th Cir.1987); *Ross v. Communications Satellite Corp.,* 759 F.2d 355 (4th Cir.1985).

## II. Sutton's and Hearth Home's Cross Motions for Summary Judgment

There are several issues that arise with respect to these cross-motions for summary judgment. First, under what standard should this Court review the denial of Sutton's benefits? Second, may the Court consider additional evidence than that which the administrators had when they decided to deny Sutton's claim? Third, given the standards and information available, should the Court disturb the plan's decision to deny benefits?

### a) Standard of Review for Plan's Decision

■ As an initial matter, the Court must determine the standard of review to apply to

---

3. In his letter informing plaintiff of the denial of his claim, Morris included a copy of the Plan's review procedure. The Plan's review procedure provides for a claimant or his representative to request reconsideration of the initial action by the Administrative Committee, to review pertinent policy and Plan documents and to submit issues and comments in writing. (Ex. 1 at 67). Sutton did not submit any additional evidence or explanation of his theory.

the administrator's denial of benefits. Although the plaintiff contends that a *de novo* review is appropriate, the Court agrees with the defendants that the administrators' decision may not be disturbed unless it constituted an abuse of discretion.

■ In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court clarified the standard of review for denials of pension benefits. "A denial of benefits . . . is to be reviewed under a *de novo* standard *unless* the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* at 115, 109 S.Ct. at 956–57 (emphasis added). Thus, following *Bruch*, the Court must first decide "whether the particular plan at issue vests in its administrators discretion either to settle disputed eligibility questions or to construe doubtful provisions of the plan itself." *de Nobel v. Vitro Corp.*, 885 F.2d 1180, 1186 (4th Cir.1989). If the plan allows for such discretion, the "reviewing court[ ] may disturb the challenged denial of benefits only upon a showing of procedural or substantive abuse." *Id.* at 1186. To trigger the abuse of discretion standard, the face of the documents must grant to the trustee the " 'power to construe disputed or doubtful terms'—or to resolve disputes over benefits eligibility. . . ." *Id.* at 1187 (emphasis omitted) (quoting *Bruch*, 489 U.S. at 111, 109 S.Ct. at 954–55).

In relevant part, the Plan at issue here provides:

Section 8.2 *Responsibilities of Administrator.* (a) the Administrator shall have the following responsibilities:

(v) to design and develop such programs and benefits as are desired by the Corporation.

(xvi) to determine all questions arising in the administration, interpretation and application of the Plan, including the status and rights of Employees, beneficiaries and other persons hereunder.

(xvii) to compute the amount of benefits which shall be payable to any person in accordance with the provisions of the Plan and the [sic] determine to whom such benefits shall be paid;

(xviii) to authorize the payment of all benefits and payments out of the Plan;

(xxi) to consider appeals of benefit denials by Employees, their dependents or beneficiaries.

(b) Subject to the limitation of the Plan, the Administrator from time to time shall establish rules for the transaction of its business. The determination of the Administrator as to any disputed questions shall be conclusive. The Administrator shall also have the power to construe the Plan and to resolve doubts and to reconcile or eliminate ambiguities or conflicts as to the construction thereof. Any construction of the plan adopted in good faith by the Administrator shall be valid and binding upon all of the parties hereto and upon all persons claiming through, under or against them, or any of them.

"There are obviously no magic words required to trigger the application of one or another standard of judicial review." *de Nobel*, 885 F.2d at 1187. The language of the Plan quoted above confers sufficient discretion to the fiduciaries to allow review only for abuse of discretion. See *de Nobel*, 885 F2d at 1187 (similar language to above in Plan necessitates abuse of discretion standard); *Crosby v. Crosby*, 986 F.2d 79, 83 (4th Cir. 1993); *Oldenburger v. Central States Southeast and Southwest Areas Teamster Pension Fund*, 934 F.2d 171, 173 (8th Cir.1991); *Exbom v. Central States, Southeast and Southwest Areas Health and Welfare Fund*, 900 F.2d 1138, 1141 (7th Cir.1990). Thus, the decision of the Plan, in this case, may only be disturbed by this Court, if it finds that the denial of benefits was unreasonable. *de Nobel*, 885 F.2d at 1187; *Sheppard & Enoch Pratt Hospital v. Travelers Ins. Co.*, 32 F.3d 120, 124 (4th Cir.1994).[4]

*Hospital & Medical Services*, 3 F.3d 80, 87 (4th Cir.1993) (fiduciary's decision entitled to less deference because of conflict of interest).

---

4. The plaintiff has not suggested that the administrators in this case were laboring under a conflict of interest which might warrant a less deferential standard of review. *Compare Doe v. Group*

### b) *Consideration of Additional Evidence*

 In determining whether the Administrator abused its discretion[5] in denying Sutton's claim, the Court may consider only such evidence as was before the Administrator when it made its decision. *Sheppard & Enoch Pratt Hospital*, 32 F.3d at 124–5. If the plan administrator had insufficient information on which to base its decision, however, the court may remand it to the administrator for a new determination.[6] *Id.* (citing *Berry v. Ciba–Geigy*, 761 F.2d 1003, 1007 (4th Cir.1985)) ("If the court believe[s] the administrator lacked adequate evidence, the proper course [is] to remand to the trustees for a new determination ... not to bring additional evidence before the district court.")

### c) *Was the Denial of Benefits an Abuse of Discretion?*

 Finally, the Court must decide whether the Plan abused its discretion in denying Sutton's claim. In applying the abuse of discretion standard, the Court may not disturb the Plan fiduciaries' interpretation of disputed provisions if it is a reasonable one. *de Nobel*, 855 F.2d at 1188 ("where plan fiduciaries have offered a 'reasonable interpretation' of disputed provision, courts may not replace [it] with an interpretation of their own."). Even if the Court would come to a different conclusion independently, therefore, it may not disturb a reasonable interpretation of the Administrators. *Doe*, 3 F.3d at 85.

 Pursuant to *de Nobel*, the court should look to the following factors in determining if the administrators' decision was reasonable: (1) whether the administrators' interpretation is consistent with the goals of the plan; (2) whether it might render some language in the plan documents meaningless; (3) whether the challenged interpretation is at odds with the procedural and substantive requirements of ERISA; (4) whether the provisions at issue have been applied consistently; and (5) whether the trustees' interpretation is contrary to the clear language of the plan. *de Nobel*, 855 F.2d at 1188 (internal quotations and citations omitted). These factors should be considered in light of the "dispositive principle ... that where plan fiduciaries have offered a 'reasonable interpretation' of disputed provisions, 'courts' may not replace [it] with an interpretation of their own—and therefore cannot disturb as an abuse of discretion the challenged benefits determination." *Id.* (citations omitted).

 In considering the factors laid out in *de Nobel*, the Court cannot say that the administrator abused its discretion in denying Sutton's claim. First, the plaintiff has suggested no inconsistency between the goals of the plan and the Administrator's interpretation of the Plan in this case.[7] Second, the administrator's interpretation here does not render some language in the plan documents meaningless or internally inconsistent. Rather, the interpretation is consistent with

---

5. Some courts have referred to the appropriate standard as "arbitrary and capricious." In *Sheppard*, the Fourth Circuit found it unnecessary to decide if the "arbitrary and capricious" standard is still viable after *Bruch*. *Sheppard*, 32 F.3d at 125. Similarly, this Court notes that its decision today would be the same under either the arbitrary and capricious standard or the abuse of discretion standard.

6. The plaintiff does not argue that this case should be remanded to the Plan administrator for consideration of additional information. When plaintiff was apprised of the initial decision to deny his claim, a copy of the procedure for appeal was included. On page 67 of the plan, it notes that any issues and comments should be submitted to the Administrator in writing. Plaintiff failed to submit any evidence showing that his accident was not due to alcohol

use or misuse. Moreover, the administrators had reliable information on which to ground their decision. Consequently, it would be improper to remand this action to the Plan for further consideration. *See Berry*, 761 F.2d at 1007–8; *Davidson v. Prudential Ins. Co. of America*, 953 F.2d 1093 (8th Cir.1992) (court should not remand to administrator where plaintiff had the opportunity but failed to submit evidence, known at the time of the administrative hearing).

7. The purpose of the Plan is set out in the Plan document as follows:

2.1 *Purpose.* This Plan is established and shall be used for the purpose of providing health and disability benefits and such other employee welfare benefits as may be specified from time to time under the Plan to eligible employees of the Corporation, or to the dependents and beneficiaries of such Employees.

the language of the alcohol exclusion and the policy itself.

The third factor is whether the challenged interpretation is at odds with the procedural and substantive requirements of ERISA. ERISA does not regulate the substantive content of welfare benefit plans. *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 732, 105 S.Ct. 2380, 2385, 85 L.Ed.2d 728 (1984). Hearth & Home, therefore, had the right to preclude coverage for accidents due to the use or misuse of alcohol. *See Sisters of St. Francis v. Swedish American Group Health Benefit Trust,* 901 F.2d 1369 (7th Cir.1990) (denial of benefits upheld under exclusionary clause for illegal activity where participant engaged in drunk driving).

The fourth factor, whether the provision at issue has been applied consistently, also weighs in favor of the Plan's interpretation here. No evidence has been discovered to show inconsistent application. In fact, because of the Plan's alcohol or drug exclusion, ordering toxicology studies was standard procedure when processing claims.[8] (Deposition of Eric Vedrin, 130–31.)

The final factor outlined in *de Nobel,* is whether the fiduciaries' interpretation is contrary to the clear language of the plan. The decision to deny Sutton's claim is not contrary, but rather, is in conformity with the language of the alcohol exclusion. The Exclusion refers to "the use or misuse of alcohol." Sutton's blood alcohol level of .112 clearly conforms with the plan language of "use" of alcohol, if not the "misuse." In addition, in light of the circumstances surrounding Sutton's accident, it was reasonable for the Plan administrators to conclude that the accident was "due to" Sutton's use of alcohol. Thus, the decision to deny Sutton's medical benefits is squarely in harmony with the Plan's exclusionary language.

■ Plaintiff's argument that the Administration Committee's decision was improper can be condensed to two points. First, he argues that it was improper for the Administration Committee, in interpreting Sutton's .112 blood alcohol level, to consider the levels at which a person is statutorily presumed to be intoxicated. *See* Maryland Code, Courts and Judicial Proceedings, § 10–307 (1990).[9] Plaintiff argues that this section only governs the presumptions of intoxication for operating a motor vehicle, and is not relevant to the circumstances of this case. While the Court agrees that the statutory presumptions of intoxication for motor vehicle use are not dispositive evidence of intoxication for this case, reference to the Code is certainly helpful in judging Sutton's level of impairment. Moreover, the policy at issue here does not exclude coverage only when a person is intoxicated. Rather, the policy language is more broadly written, encompassing the "use" of alcohol.

■ Second, plaintiff contends that the Administration Committee improperly found that Sutton's alcohol use caused his accident. He contends that there was no evidence of causation, and in fact, his decision to dive would have been the same drunk or sober.[10] In determining whether Sutton's accident was "due to" alcohol use, the Plan administrators had to examine the surrounding circumstances. Given the circumstances here, the Court cannot say that it was unreasonable for them to so conclude. As evidenced by his elevated blood alcohol level, Sutton

8. A toxicology report was requested even for the President of Hearth & Home's claim for medical benefits following his motorcycle accident. (Deposition of Vedrin, at 130–131).

9. Under § 10–307, a blood alcohol level of .07 is considered prima facie evidence of impairment for operating a motor vehicle. A blood alcohol level of .10 is considered prima facie evidence of intoxication.

10. In support of this proposition, plaintiff cites non-ERISA precedent from other states where the courts have found that there must be a causal connection between alcohol/drug use and the accident in order for benefits to be denied under a similar exclusionary clause. *See* (Plaintiff's Motion for Summary Judgment, pgs. 6–8, citing *e.g. Guay v. New York Cent. Mut. Fire Ins.,* 144 Misc.2d 785, 545 N.Y.S.2d 265 (1989)). These cases are inapposite for two reasons. As an initial matter, those courts were not confined by the very deferential standard of review required in ERISA cases. Second, and more importantly, in concluding that Sutton's accident was "due to" alcohol use, the administrators necessarily found that a causal connection between Sutton's alcohol use and his accident existed.

had been drinking heavily that night. While at a public eating/drinking establishment, he decided to shed his jacket, climb up onto a waist-high railing and plunge head first into the water.[11] Confronted with this evidence and the multiple references to alcohol use in the hospital records, it was reasonable for the Plan to decide that Sutton's accident was due to alcohol use or misuse.

Thus, examining the record before the administrator at the time of its decision to deny Sutton's benefits, the Court cannot say that the decision constituted an abuse of discretion or was arbitrary and capricious. Because Sutton's accident cannot escape the scope of the exclusionary language of the Plan, the Court must grant defendant Hearth & Home's motion.

■ In a case such as this, the court must not allow its sympathy for Mr. Sutton to create coverage where none exists or to override the appropriately exercised discretion of the Plan administrators. The plan administrators not only have the obligation to pay out legitimate claims, but they also have "... the obligation to guard the assets of the trust from improper claims as well." *LeFebre v. Westinghouse Electric Corp.*, 747 F.2d 197, 207 (4th Cir.1984). This responsibility entails the exercise of considerable discretion. The Supreme Court has mandated that the Court allow the Plan administrators that discretion, and this Court is constrained to follow that mandate.

III. *American Pioneer's Motion for Summary Judgment and Standard Security's Motion for Summary Judgment*

Because the Court has granted the defendant Hearth & Home's motion for summary judgment against plaintiff Robert Sutton, there are no grounds on which Hearth & Home can seek indemnity from American Pioneer or Standard Security, as excess loss insurers. In each of their respective motions for summary judgment, American Pioneer and Standard Security have adopted Hearth & Home's arguments against Sutton. Thus,

for the same reasons as given above, their motions shall be granted.

An appropriate Order shall issue.

---

11. As Mr. Newsome noted, had the circumstances of this case shown that Sutton had been pushed into the water or that the railing gave way, coverage may not have been denied. Here, however, there is not sufficient evidence of other causative factors for this Court to override the decision of the plan.