**Charles W. EZELL, Plaintiff,**

**v.**

**DAN RIVER INC., et al. Defendants.**

**No. CIV. A. 6:99CV0085.**

United States District Court,
W.D. Virginia.
Lynchburg Division.

Oct. 4, 2000.

Gary M. Coates, Fralin, Feinman, Coates & Kinnier, P.C., Lynchburg, VA, for Charlie W. Ezell.

James Phillip Naughton, Sara Lynne Berg, Hunton & Williams, Norfolk, VA, for Dan River, Inc., Dan River, Inc. Long Term Disability Plan for Salaried Employees.

Charles B. Wayne, Piper, Marbury, Rudnick & Wolfe, LLP, Washington, DC, Eric Paltell, Jonathan Nash, Piper, Marbury, Rudnick & Wolfe, LLP, Baltimore, MD, for Standard Ins. Co.

## MEMORANDUM OPINION

MOON, District Judge.

This case is before the Court on Defendants' motions for summary judgment. Plaintiff Charles Ezell brought this action against Dan River Inc. ("Dan River"), Dan River Inc. Long Term Disability Plan for Salaried Employees ("DRLTD"), and Standard Insurance Co. ("Standard") alleging that the Defendants violated the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, by denying him long term disabili-

ty benefits. Because Plaintiff's evidence fails to show that Standard abused its discretion in denying his claim for disability benefits, and because Plaintiff's breach of contract claim is preempted by ERISA, Defendants' motions for summary judgment shall be granted.

## I.  FACTUAL BACKGROUND

Ezell began working for Dan River in 1979 as the company's Director of Safety and Workers' Compensation. As such, Ezell was responsible for managing Dan River's work place programs, developing and maintaining a workers' compensation program, coordinating an alcohol and drug abuse program, and overseeing workplace hygiene and ergonomics.

In November, 1981, Ezell suffered a ruptured cerebral aneurysm. He underwent surgery and other medical treatment, and returned to work at Dan River in February, 1982. While he did experience some residual cognitive problems associated with the aneurysm, he successfully performed his job until he was discharged in June, 1996.

During his time with Dan River, Ezell had an alcohol abuse problem. He checked into 28–day inpatient alcohol treatment programs in 1986 and 1991. Dan River paid Ezell during his time at the treatment facilities and the company's health plan covered his related medical expenses.

Ezell authored Dan River's drug and alcohol policy. According to the policy, employees were prohibited from using or being under the influence of alcohol on company time or on company property. Violators of the policy were subject to disciplinary action, up to and including discharge.

On the afternoon of June 18, 1996, numerous Dan River employees observed Ezell at work and characterized his behavior as inappropriate and belligerent. Gregory Boozer, a vice president of Dan River, encountered Ezell in the hallway, smelt alcohol on his breath, and noticed his speech was slurred and incoherent. Boozer contacted Ezell's immediate supervisor, William Lunney, to further investigate the situation.

As Lunney and Ezell spoke, Lunney detected the strong odor of alcohol on Ezell's breath and noticed that his speech was slurred. Lunney then asked to Ezell to accompany him to the medical department to take a breathalyzer test. Ezell refused, saying the test would be too embarrassing given that he was the person who implemented the company's alcohol program. Lunney then suspended Ezell and told him to go home for two or three days to "sober up."

Later that day, Ezell called phoned Boozer and cursed him, calling him a "goddam son of a bitch." Ezell complained that he had been fired. Boozer informed Ezell that he had not been fired and told him to take two to three days to "sleep it off."

Still later that day, Ezell barged into Boozer's office, interrupting a meeting, and demanded that Boozer fire him and negotiate a severance package. Boozer noted that Ezell was extremely intoxicated. Before leaving the office, Ezell apologized for his behavior and insisted on hugging Boozer.

Even later that day, Boozer looked out his window to see that Ezell had driven his car up on the sidewalk outside Dan River's offices. At that point, Ezell's wife was also present. She informed Boozer that Ezell sometimes "self-medicates" by drinking alcohol. Boozer then drove Ezell and his wife home in Ezell's car.

Based upon his conduct on June 18, Dan River decided to terminate Ezell on June 21, 1996. Ezell received a severance package, paying him salary for 26 weeks and allegedly allowing him to participate in the company's long-term disability plan ("LTD

plan") during that same time period.[1]

Shortly after his dismissal from Dan River, Ezell established an independent safety consulting business and devoted a substantial amount of time to the business, until he closed down the business in December, 1996. He also continued to serve as chairman and section editor of the National Safety Management Association after leaving Dan River.

On December 18, 1996, Ezell submitted a claim for LTD benefits to Standard, claiming that he was unable to work because of "brain damage" causing "functional difficulties, memory problems, cannot tolerate stress, cannot operate motor vehicles, spacial problems, [and] concentration problems."

Standard denied Ezell's claim for LTD benefits by letter on April 18, 1997. Upon request by Ezell's wife, Standard reviewed its denial decision. Following this second review, Standard affirmed its initial decision to deny benefits by letter on July 17, 1997. Ezell continued to challenge Standard's decision and submitted additional information for the company to consider. In response to Ezell's protests, Standard had Ezell's file reviewed in August, 1997, September, 1997, March,1 1998, and September, 1998. The company's decision to deny benefits remained unchanged.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment should only be granted if, viewing the record as a whole in the light most favorable to the non-moving party, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Terry's Floor Fashions, Inc. v. Burlington Industries, Inc.,* 763 F.2d 604, 610 (4th Cir.1985). In

considering a motion for summary judgment, "the court is required to view the facts and draw reasonable inferences in a light most favorable to the non-moving party." *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.1994) (citations omitted), *cert. denied,* 513 U.S. 813, 115 S.Ct. 67, 130 L.Ed.2d 24 (1994).

## III. ANALYSIS

Over the past few years, the Fourth Circuit has developed a "well-settled framework" for review of the denial of benefits under ERISA plans. *Ellis v. Metropolitan Life Ins. Co.,* 126 F.3d 228, 232 (4th Cir.1997). In cases where the benefit plan grants the administrator or fiduciary discretionary authority to determine eligibility, the denial decision must be reviewed for abuse of discretion. *See Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Bedrick v. Travelers Ins. Co.,* 93 F.3d 149, 152 (4th Cir.1996). Under this deferential standard, the administrator or fiduciary's decision will not be disturbed if it is reasonable, even if the court itself would have reached a different conclusion. *See Bruch,* 489 U.S. at 115, 109 S.Ct. 948; *Brogan v. Holland,* 105 F.3d 158, 161 (4th Cir.1997). Such a decision is considered reasonable if it is "the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Brogan,* 105 F.3d at 161 (quoting *Bernstein v. CapitalCare, Inc.,* 70 F.3d 783, 787 (4th Cir.1995)).

At the outset, it is worth noting that the scope of this Court's review is limited to the evidence that was before the ERISA plan administrator at the time of the decision to deny benefits. *See Elliott v. Sara Lee Corp.,* 190 F.3d 601, 608 (4th Cir.1999); *Quesinberry v. Life Ins. Co. of N. Am.,* 987 F.2d 1017, 1026 (4th Cir.1993)

1. Standard alleges that it was not a party to the severance agreement between Dan River and Ezell and that the terms of the LTD plan did not allow for the extension of benefits beyond Ezell's termination date without the written consent of Standard. Standard never provided such consent.

To determine whether an abuse of discretion occurred, the court must consider the facts before the decision-maker at the time of decision-making. *See Elliott,* 190 F.3d at 606; *Sheppard & Enoch Pratt Hosp., Inc. v. Travelers Ins. Co.,* 32 F.3d 120, 124–25 (4th Cir.1994).

■ As an initial matter, this Court must determine *de novo* whether the ERISA plan at issue confers discretionary authority on the administrator or fiduciary and if so, whether the administrator or fiduciary acted within that discretion. *Ellis,* 126 F.3d at 233; *Haley v. Paul Revere Life Ins. Co.,* 77 F.3d 84, 89 (4th Cir.1996). In the present case, there is no question that Standard possessed discretionary authority to determine Ezell's entitlement to benefits and that Standard's denial was plainly within that scope. This Court, therefore, reviews Standard's denial decision for an abuse of that discretion vested in Standard. *See Ellis,* 126 F.3d at 233.

■ Here, Ezell rightly contends that a substantial factor that this Court must consider is that Standard, acting as both fiduciary of the plan and the plan's insurer, suffers from a conflict of interest. The Fourth Circuit has also established a "well-developed framework" for considering such conflicts of interest in a court's reviewing calculus. *Id.* As recently explained in *Bedrick v. Travelers Insurance Company,* courts may apply the conflict of interest factor, on a case-by-case basis, to lessen the deference normally given under this standard of review only to the "degree necessary to neutralize any untoward influence resulting from the conflict." *Bedrick,* 93 F.3d at 152 (citations omitted). Under this "modified abuse-of-discretion" standard, "[the] more incentive for the administrator or fiduciary to benefit itself by a certain interpretation of benefit eligibility or other plan terms, the more objectively reasonable the administrator or fiduciary's decision must be and the more substantial the evidence must be to support it." *Ellis,* 126 F.3d at 233.

■ In the present case, it is clear that an administrator or fiduciary, free of Standard's conflict of interest, would have been more than reasonable in exercising its discretion to deny Ezell benefits under the circumstances of this case. The decision maker had before it absolutely no medical evidence of any "catastrophic event" that Ezell alleges to have occurred of June 18, 1996, the effects of which rendered him disabled. What Standard did have were the records of Dr. Bradley Fancher, an independent medical specialist who reviewed Ezell's file and concluded that he was not disabled. Standard also had the records of Dr. Della Williams, Ezell's primary care physician from 1994 to 1996, in which there is no indication that Ezell was disabled or unable to work due to his frontal lobe condition.

In support of his disability claim, Ezell directs the Court's attention to the reports of Drs. Frank Wood, Dennis Babick, and Victor Owusu–Yaw. Dr. Wood's October 6, 1998 report makes no mention of any change in Ezell's condition in 1996 that would render him disabled, rather it makes note that "the consequences of [Ezell's] brain injury would have been operative since 1981 at the latest." Dr. Babik, a psychologist, is not a medical doctor and his opinion as to Ezell's medical condition therefore carries little weight. Finally, Dr. Owusu–Yaw never saw or treated Ezell. He based his June, 1996 disability determination, a determination made two years after the fact, entirely on the reports of Dr. Williams, Ezell's primary care physician who never found Ezell to be disabled.

Ezell next argues that he is eligible for ERISA disability benefits because he received a Social Security disability award which became effective as of June 21, 1996. Social Security determinations are not binding on ERISA plan administrators. *See Elliott,* 190 F.3d at 607; *Madden v. ITT Long Term Disability Plan for Salaried Employees,* 914 F.2d 1279, 1286 (9th Cir.1990). If that were not the case,

ERISA fiduciaries would be stripped of all administrative discretion, and would be required to the follow the decision of the Social Security Administration ("SSA"), even where the plan determines benefits under a different standard or the medical evidence presented is to the contrary. *See Madden*, 914 F.2d at 1286.

Ezell is correct in asserting that the Social Security disability definition is more restrictive than is the definition under Standard's LTD policy. Notwithstanding the differing standards and the decision of the SSA, it is the opinion of this Court that, based upon the medical evidence in the administrative record, Standard did not abuse its discretion in determining that Ezell was not disabled.

 Undoubtedly, Standard stood to gain financially from the denial of Ezell's claim. While this Court has considered the conflict of interest factor and lessened the degree of deference normally afforded such discretionary decisions, the Court must still be cognizant of the fact that Standard, as a fiduciary, is required to serve the best interests of all plan beneficiaries, and not simply the best interest of a single potential beneficiary. *See Ellis*, 126 F.3d at 234. Given the lack of medical evidence of a disabling event in 1996, this Court is confident that a fiduciary free of any conflict of interest would have been more than reasonable in rejecting Ezell's claim and preserving the plan's funds for those who satisfy the plan's definition of "disabled."

Ezell has also asserted a breach of contract claim alleging that Dan River breached their severance agreement by failing to follow the procedures necessary to extend his LTD coverage with Standard to cover the six month period following his termination. ERISA preempts state-law claims to the extent they "relate to" an ERISA plan. 29 U.S.C. § 1144(a); *Stiltner v. Beretta U.S.A. Corp.*, 74 F.3d 1473, 1480 (4th Cir. 1996). Ezell's state-law contract claim "re-lates to" the ERISA plan, and hence is preempted. *See id.*

## IV. CONCLUSION

Because Plaintiff's evidence fails to show that Standard abused its discretion in denying his claim for disability benefits, and because Plaintiff's breach of contract claim is preempted by ERISA, Defendants' motions for summary judgment shall be granted.