COLE, C.J., delivered the opinion of the court in which STRANCH, J., joined, and McKEAGUE, J., joined in the result, McKEAGUE, J. (pp. 176-77), delivered a separate opinion dissenting from Part II.A of the majority opinion and concurring in the judgment. OPINION COLE, Chief Judge. This matter is about whether a contract should mean what it says. After Beau Darrell Heimer was injured in a motorbike accident, he filed an insurance claim with Companion Life for the bill. Companion Life denied the claim, citing a plan exclusion that disclaimed coverage for injuries resulting from the “illegal use of alcohol.” But the district court read “illegal use of alcohol” to disclaim coverage only for the illegal consumption of alcohol, and not for Heimer’s illegal post-consumption conduct of operating a motorbike while under the influence of alcohol. The district court’s reading is consistent with the ordinary meaning of “use” and best gives effect to the contract as a whole. We affirm. I. BACKGROUND Heimer was only a year over the legal drinking age on a fateful night in April 2013. That night, he and his friends drank and, later, rode their motorbikes in a field in Michigan. While riding their motorbikes, Heimer and one of his friends collided. Heimer suffered exténsive injuries and incurred more than $197,333.50 in medical bills. Medical records indicate that Heimer’s blood alcohol level shortly after the crash was 0.152, nearly twice the limit to legally use an off-road vehicle in Michigan. Heimer was insured by Companion Life. As required by his plan, he submitted a medical claim form shortly after the accident, but the plan administrator denied coverage. The plan administrator pointed to a plan exclusion that disclaimed coverage for “[sjervices, supplies, care or treatment of any injury or [sjickness which occurred as a result of a Covered Person’s illegal use of alcohol.” (Administrative Record, R. 34-1, Page ID 550, 605.) After exhausting his administrative appeals, Heimer filed suit, and the case eventually found its way into federal court. Parting with the insurance administrator, the district court held that the plan exclusion did not encompass Heimer’s injuries. It noted that there is a difference between the illegal use of alcohol—such as drinking while under 21 or drinking in defiance of a court order—and illegal post-consumption conduct, such as the .illegal use of a motor vehicle. What was illegal about Heimer’s behavior was his use of a motor vehicle, not of alcohol. And if there were any doubts, the district court explained, the contract should be construed against the insurance company as the drafter. Companion Life now appeals. II. ANALYSIS We review Companion Life’s plan, and the district court’s reading of it, without deference. See Hoover v. Provident Life & Accident Ins. Co., 290 F.3d 801, 808-09 (6th Cir. 2002). We interpret plan provisions “according to their plain meaning, in an ordinary and popular sense,” giving effect to the unambiguous terms of the pjan. Perez v. Aetna Life Ins. Co., 150 F.3d 550, 556 (6th Cir. 1998). A. The Ordinary Meaning of “Use of Alcohol” is the Act of Consuming Alcohol. We agree with the district court that “use of alcohol” most naturally refers to the act of consuming alcohol, and not post-consumption conduct. The plan does not define “use,” so we give the term its ordinary meaning. In this context, “use” means “[tjhe action of consuming something as food, drink, a drug, etc.” Oxford English Dictionary (3d ed. 2011); see also Merriam Webster’s Collegiate Dictionary (defining “to use” as “to consume or take (as liquor or drugs) regularly”) (11th ed. 2004); American Heritage Dictionary of the English Language (“To partake of, especially as a habit: She rarely uses alcohol”) (5th ed. 2017). In everyday English, an “illegal use of alcohol” thus means an illegal act of consuming alcohol—such as drinking while under 21, on public streets, or in an unlicensed restaurant. See, e.g., Mich. Const. Art. 4, § 40; Mich. Comp. Laws § 436.1915; Mich. Comp. Laws § 436.1913. Read this way, Heimer’s conduct was not an “illegal use of alcohol”: Heimer was over the legal age to drink, and Companion Life has not pointed to any law that prohibited Heimer from consuming alcohol. Companion Life would have us read “use” to mean “under the influence” of alcohol, but we have found no definitions of “use” that are so capacious. To be sure, “use” can also be defined to mean “the act of putting something to work, or employing or applying a thing.” Oxford English Dictionary (3d ed. 2011). But “[i]n law, as in life,” context matters. Yates v. United States, — U.S. —, 135 S.Ct. 1074, 1082, 191 L.Ed.2d 64 (2015) (Ginsburg, J., plurality op.). A natural English speaker would say that one “consumes” alcohol, but no natural speaker would say that someone “employs” or “applies” alcohol. The other definitions of “use” must give way to the context-specific one. And though “use” sometimes means habitual consumption— for instance, “his drug use lasted years”— even that usage is not so broad to mean “under the influence.” Other plan language also forecloses Companion Life’s reading. When the plan intended to disclaim coverage for injuries sustained while under the influence of something, it used specific language. In that vein, the plan disclaimed coverage for injuries “while under the influence of any controlled substance ... not administered on the advice of a Physician.” (Administrative Record, R. 34-1, Page ID 550.) This “difference in language demands a difference in meaning.” Gallo v. Moen Inc., 813 F.3d 265, 270 (6th Cir. 2016). Under the plan, “use” and “under the influence” are different. Nor has Companion Life argued that “illegal use of alcohol” is a term of art for driving under the influence. Instead, it volunteered its belief that the “illegal use of alcohol” language would exclude coverage for injuries from misdemeanor bar fights and, remarkably, for “simply sustaining a fall while at home.” (Appellant’s Opening Br. 19.) Whatever the merits of that, it does not argue that “illegal use of alcohol” is a specialized term for driving under the influence. And there is still more to support our reading: Heimer pleaded guilty to an offense that proscribed the use of a motor vehicle, not the usé of alcohol. Heimer operated an off-road vehicle while intoxicated, a misdemeanor offense under Michigan law. That law provides that “[a] person shall not operate an [off-road vehicle] if, due to the consumption of intoxicating liquor ,,. the person has visibly impaired his or her ability to operate the [off-road vehicle].” Mich. Comp. Laws § 324.81135(1) (repealed 2015). True, Heimer’s conduct was illegal “due to the consumption of intoxicating liquor,” but the illegal act proscribed by the statute is the use of a vehicle. As the statute says, “[a] person shall not operate an [off-road vehicle].” The statute does not say that a person “shall not consume alcohol,” the language used by the Michigan legislature when it intended to make illegal the consumption of alcohol. See, e.g,, Mich. Comp. Laws § 436.1913 (“A person shall not consume alcoholic liquor....”); Mich. Comp. Laws § 436.1915 (“Alcoholic liquor shall not be consumed.... ”). Indeed, had Heimer’s night ended with him going to bed instead of going for a drive, there would have been nothing illegal about his conduct at all, even though his use of alcohol is the same in either scenario. The only difference between this fiction and reality is Heimer’s post-use conduct. And only that is illegal. Finally, none of the hodgepodge of district court cases cited by Companion Life persuade us to adopt a different reading. As’ Companion Life conceded at oral argument, many of those cases considered different plan language. E.g., Tourdot v. Rockford Health Plans, Inc., 357 F.Supp.2d 1100, 1103 (W.D. Wis. 2005) (excluding coverage for injuries resulting from “illegal acts”); Sutton v. Hearth & Home Distribs., Inc. Emp. Benefit Plan, 881 F.Supp. 210, 213 (D. Md. 1995) (excluding coverage for injuries “due to the use or misuse of alcohol”). More importantly, none of the cases analyzed the ordinary meaning of the word “use,” and all instead deferred to the reading of the plan adopted by the insurance company’s administrator. By giving short shrift to the ordinary meaning of “use,” those cases elided the distinction between “use of alcohol” and post-use conduct. The worst one can say about our reading is that it does not give effect to the insurance company’s understandable desire not to pay for injuries sustained during a drunken ride on a motorbike. But if the insurance company wanted to exclude this type of injury, it should have used specific language to that effect, as many other insurance companies have done. E.g., Cultrona v. Nationwide Life Ins. Co., 748 F.3d 698, 702 (6th Cir. 2014) (discussing exclusion where the “Covered Person [is] deemed and presumed, under the law of the locale in which the Injury is sustained, to be under the influence of alcohol or intoxicating liquors.” (emphasis omitted)). B. The Plan is Construed Against Companion Life, the Drafter. Were there any doubts that the plan is unambiguous, the ordinary contract principle to construe a contract against its drafter is the final nail in the coffin. When a court conducts de novo review, as here, “any ambiguities in the language of the plan [must] be construed strictly against the drafter of the plan.” Regents of Univ. of Mich. v. Emps. of Agency Rent-A-Car Hosp. Ass’n, 122 F.3d 336, 340 (6th Cir. 1997). Because our reading of the contract is at least reasonable, Heimer would still prevail even if we had concluded that the plan was ambiguous. III. CONCLUSION We affirm the judgment of the district court.