Nancy A. GARDNER, Plaintiff,

v.

**E.I. DU PONT DE NEMOURS AND COMPANY, INC., et al., Defendants.**

**Civil Action No. 2:96–0423.**

United States District Court, S.D. West Virginia, Charleston Division.

Sept. 23, 1997.

Robert M. Losey, Huntington, WV, David L. Stuart, Masters & Taylor, Charleston, WV, for Nancy A. Gardner.

Paula Durst Gillis, Charles L. Woody, Eric W. Iskra, Spilman, Thomas & Battle, Charleston, WV, for Du Pont.

Robert H. Sweeney, Jr., Jenkins, Fenstermaker, Krieger, Kayes & Agee, Huntington, WV, for CIGNA.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending are motions and cross-motions for summary judgment[1] filed by all parties.[2] For reasons that follow, the Court **DENIES** Plaintiff Gardner's motion and **GRANTS** both E.I. Du Pont de Nemours and Company, Inc.'s ("DuPont") and Connecticut General Life Insurance Company's ("CGLI") motions.

### I. FACTUAL BACKGROUND

Mrs. Gardner brings this action both in her individual capacity and as Administratrix of the Estate of her late husband, George Gardner. Mr. Gardner was employed as a lab technician for DuPont from 1980 to 1989. During those years, Mr. Gardner was a participant in DuPont's contributory and non-contributory[3] life insurance plans. CGLI was the insurer from whom DuPont purchased the insurance policies.

---

1. Pending also is Defendant DuPont's motion to strike Plaintiff's motion for summary judgment. The Court **DENIES** this motion, but **GRANTS** Plaintiff's motion for leave to file a memorandum in response to Defendants' motions.

2. CGLI files for summary judgment only on Plaintiff's claim of breach of fiduciary duty, maintaining it is the "only remaining count which asserts a claim against Connecticut General." Def. CGLI's Mot. at 7. For purposes of this Order, the Court assumes all counts could have been raised against both DuPont and CGLI, because all claims fail on their merits as against either defendant.

3. Participants paid a portion of the premium to purchase the contributory life insurance plans. DuPont paid the difference between the actual cost of the plans and the premium paid by the employees. The premiums for non-contributory life insurance, however, were paid entirely by DuPont.

The Plan document entitled "Contributory Life Insurance Plan" states, "The Company shall have the discretionary right to determine eligibility for benefits hereunder and to construe the terms and conditions of this Plan. The decision of the Company shall be final with respect to any questions arising as to the interpretation of this Plan." Ex. 3, Def.'s Mot., at 8.

In 1989 Mr. Gardner left his active employment with DuPont under the company's total and permanent disability income benefit program.[4] Under the terms of the life insurance plans, his non-contributory life insurance remained in full effect. Because Mr. Gardner had not been employed with DuPont for 15 years, his contributory life insurance was terminated.[5] He was given an opportunity to convert the contributory insurance into a separate policy, at his own expense. No evidence has been proffered that Mr. Gardner applied to the insurance company for such conversion.

In 1992 DuPont implemented a new computerized payroll system. After the conversion to the new system, DuPont began deducting $50.40 from each of Mr. Gardner's disability checks. This deduction was for payment of premiums for contributory life insurance. The Gardners did not notify DuPont of the change, nor did they inquire about the life insurance coverage at that time. The deductions continued until after Mr. Gardner died when the mistake was discovered.

In late 1993 Mr. Gardner called DuPont's benefits group. Ms. Christine Gaesser, a DuPont employee, told Mr. Gardner that he had $169,000 [6] in life insurance. Ms. Gaesser's mailed confirmation to Mr. Gardner presented conflicting information: the computer printout listed his coverage at $109,000 ($25,000 in non-contributory coverage + $84,000 in contributory coverage), although her handwritten comment stated $169,000 total coverage.

After Mr. Gardner's death in March 1994, Mrs. Gardner contacted DuPont to submit a claim for the life insurance benefits. At that time, DuPont discovered the computer error and the conversation between Ms. Gaesser and Mr. Gardner. Since then, Mrs. Gardner has received the benefits from the non-contributory life insurance policy as well as a refund of the total premiums paid between 1992 and Mr. Gardner's death. DuPont argues Mr. Gardner was not entitled to participate in the contributory insurance after he left on disability. Therefore, it disputes Mrs. Gardner's right to benefits.

Mrs. Gardner raises the following claims: 1) breach of fiduciary duties under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2); 2) wrongful denial of benefits under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B); and 3) federal common law claim using theories of estoppel, reasonable expectation of benefit, fraud and breach of contract.

## II. DISCUSSION

### A. *The Summary Judgment Standard:*

Our Court of Appeals often has stated the settled standard and shifting burdens governing the disposition of a motion for summary judgment:

> Rule 56(c) requires that the district court enter judgment against a party who, "after adequate time for ... discovery fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." To prevail on a motion for summary judgment, the [movant] must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) it is entitled to judg-

---

4. Mr. Gardner's disability was not caused by his employment.

5. The Summary Plan Description of the contributory life insurance plan states:

> If you are terminated because of total and permanent disability, your contributory insurance continues according to how much service you have.

> If you have less than 15 years service, your coverage will be cancelled at the time your employment terminates because of your disability....

Ex. 2, Def.'s Mot., at 8.

6. There is no dispute that any approvable total coverage amounts would have been decreased by $3000 because of a previous disbursement paid to Mr. Gardner.

ment as a matter of law. In determining whether a genuine issue of material fact has been raised, we must construe all inferences in favor of the [the nonmovant]. If, however, "the evidence is so one-sided that one party must prevail as a matter of law," we must affirm the grant of summary judgment in that party's favor. The [nonmovant] "cannot create a genuine issue of fact through mere speculation or the building of one inference upon another." To survive [the motion], the [nonmovant] may not rest on [his] pleadings, but must demonstrate that specific, material facts exist that give rise to a genuine issue. As the *Anderson* [*v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ] Court explained, the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff[.]"

*Harleysville Mut. Ins. Co. v. Packer,* 60 F.3d 1116, 1119–20 (4th Cir.1995) (citations omitted); *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.), *cert. denied,* 513 U.S. 813, 115 S.Ct. 67, 68, 130 L.Ed.2d 24 (1994); *see also Cabro Foods, Inc. v. Wells Fargo Armored Service Corp.,* 962 F.Supp. 75, 77 (S.D.W.Va.1997); *Spradling v. Blackburn,* 919 F.Supp. 969, 974 (S.D.W.Va.1996).

"At bottom, the district court must determine whether the party opposing the motion for summary judgment has presented genuinely disputed facts that remain to be tried. If not, the district court may resolve the legal questions between the parties as a matter of law and enter judgment accordingly." *Thompson Everett, Inc., v. National Cable Advertising, L.P.,* 57 F.3d 1317, 1323 (4th Cir.1995).

7. A civil action may be brought—

   (2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title.
   29 U.S.C. § 1132(a)(2).

8. Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan

### B. ERISA Claims

#### 1. Breach of fiduciary duty

■ Through 29 U.S.C. § 1132(a)(2),[7] Plaintiff alleges a claim under 29 U.S.C. § 1109(a),[8] arguing both DuPont and CGLI are fiduciaries, as defined in 29 U.S.C. § 1002(21)(A), and "through their misrepresentations to George A. Gardner breached their duty to the Plan participant." Pl.'s Mot. at 3. Mrs. Gardner's claim fails because she brings the suit only in individual and administratrix capacity, rather than on behalf of the plan.[9]

Our district has previously recognized, based on the Supreme Court's ruling in *Massachusetts Mutual Life Ins. Co. v. Russell,* 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), "Plaintiffs have no private right of action for declaratory, injunctive, or damages relief under ERISA § 409(a). Section 409(a) authorizes relief only 'for the plan itself,' and Plaintiffs may not seek relief for themselves as plan beneficiaries." *Aliff v. BP America, Inc.,* 826 F.Supp. 178, 188 (S.D.W.Va.1993), *aff'd,* 26 F.3d 486 (4th Cir.1994). Accordingly, as to this claim, the Court **GRANTS** summary judgment for DuPont and CGLI and **DENIES** summary judgment for Mrs. Gardner.

#### 2. Recovery of benefits due

In her motion for summary judgment, Mrs. Gardner raises a claim to recover benefits under the life insurance that was part of DuPont's welfare benefits plan. 29 U.S.C. § 1132(a)(1)(B) states:

A civil action may be brought

   (1) by a participant or beneficiary

by fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. A fiduciary may also be removed for a violation of section 1111 of this title.

29 U.S.C. § 1109(a).

9. In her responsive memorandum to Defendants' motions for summary judgment, Mrs. Gardner argues that she is entitled to individual relief under 29 U.S.C. § 1132(a)(3). The Court does not address that claim except to note that her claim of breach of fiduciary duty arises under 29 U.S.C. § 1132(a)(2), not § 1132(a)(3).

(B) to recover benefits due to him under the terms of the plan [or] to enforce his rights under the terms of the plan ...

Our Court of Appeals has recognized that *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) "significantly curtailed a court's ability to review" a company's discretionary decision to deny benefits. *Brogan v. Holland,* 105 F.3d 158, 161 (1997).

To approach a claim under § 1132(a)(1)(B), the Court must first determine de novo whether the plan gives the company discretion to determine eligibility for benefits or to construe the plan's terms. *Haley v. Paul Revere Life Ins. Co.,* 77 F.3d 84, 89 (4th Cir.1996). If so, the Court determines de novo whether the company, in making the benefits decision, acted within the scope of that discretion. *Id.* Continuing with the third step, the Court reviews the merits of the company's decision under an abuse of discretion standard, which forbids the Court to "disturb the ... decision if it is reasonable, even if the court itself would have reached a different conclusion." *Id.* Under the abuse of discretion standard, the Court reviews only the evidence that the company had before it when it made the benefits decision. *Bernstein v. CapitalCare Inc.,* 70 F.3d 783, 788 n. 5 (4th Cir.1995).

Our Court of Appeals has established the criteria [10] for determining whether the company's decision was an abuse of its discretion, stating the court must consider, for example:

1) whether administrators' interpretation is consistent with the goals of the plan; 2) whether it might render some language in the plan meaningless or internally inconsistent; 3) whether the challenged interpretation is at odds with the procedural and substantive requirements of ERISA itself; 4) whether the provisions at issue have been applied inconsistently; 5) and of course whether the fiduciaries' interpreta-

tion is contrary to the clear language of the plan.

*Brogan,* 105 F.3d at 161 (quoting *de Nobel v. Vitro Corp.,* 885 F.2d 1180, 1188 (4th Cir. 1989)). A court must also consider whether DuPont had a conflict of interest. The existence of a conflict of interest may be relevant but it is just " 'one factor to be weighed in determining whether trustees have abused their discretion.' " *Aliff,* 826 F.Supp. at 185–86 (quoting *Bidwill v. Garvey,* 943 F.2d 498, 508 (4th Cir.1991)). " 'The dispositive principle remains, however, that where plan fiduciaries have offered a reasonable interpretation of disputed provisions, courts may not replace it with an interpretation of their own.' " *Marcum v. Zimmer,* 887 F.Supp. 891, 895 (S.D.W.Va.1995) (quoting *de Nobel,* 885 F.2d at 1188).

Here, it is clear that abuse of discretion is the appropriate standard. The Plan states, "The Company shall have the *discretionary* right to *determine eligibility for benefits* hereunder and to *construe the terms and conditions of this Plan.* The decision of the Company shall be final with respect to any questions arising as to the interpretation of this Plan." Ex. 3, Def.'s Mot., at 8 (emphasis added). Tracking the language of the *Firestone* test, this provision grants DuPont discretion, thereby invoking the abuse of discretion standard. Moreover, because the Plan language gives DuPont the specific right to determine eligibility for benefits, the company acted within its discretion when it determined Mr. Gardner's eligibility for benefits.

Under the abuse of discretion standard, the Court cannot hold DuPont's determination Mr. Gardner was ineligible for benefits was unreasonable. DuPont was aware of the facts relevant to its determination—it knew Mr. Gardner had not paid premiums from 1989 until 1992. It knew beginning in 1992, premiums had been deducted from Mr.

---

10. To advance her § 1132(a)(1)(B) claim, Mrs. Gardner raises a number of arguments that are irrelevant to the proper analysis. *See* Pl.'s Mem. in Resp. at 18–21 (arguing, *inter alia,* Mr. Gardner relied on DuPont's representations, and amendments to the plan document enacted just prior to the cancellation of Mr. Gardner's insur-

ance might have foreclosed such cancellation). Pursuant to the § 1132(a)(1)(B) analysis as structured by our Court of Appeals, these arguments are not addressed by the Court because Plaintiff's claim fails on the merits. Plaintiff raises a host of other arguments that are not properly cognizable in this setting.

Gardner's disability checks. It knew Mr. Gardner had received in 1993 informal oral and written communications indicating that he was participating in the contributory insurance plan. It knew that Mr. Gardner had died and Mrs. Gardner was submitting a claim for the insurance benefits.

DuPont's interpretation of the Plan is in accord with the clear language of the Plan, *see* Ex. 2, Def.'s Mot., at 8.[11] Moreover, it is in full accord with the substantive requirements and preferences of ERISA—namely, that a Plan be administered according to its written terms rather than informal oral or written communications. ERISA § 402(a), 29 U.S.C. § 1102(a)(1) (stating "Every employee benefit plan shall be established and maintained pursuant to a written instrument.") Finally, DuPont has offered a reasonable interpretation of the provisions relating to its decision to deny Mr. Gardner benefits. Therefore, the Court holds DuPont did not abuse its discretion in denying benefits to Mr. Gardner.

Accordingly, as to this claim, the Court **DENIES** Plaintiff's motion for summary judgment and **GRANTS** Defendants' motions for summary judgment.

### C. Federal Common Law

Mrs. Gardner alleges several claims properly handled under the umbrella of federal common law. She seeks relief under any of a variety of theories—estoppel, reasonable expectation of benefit, fraud and breach of contract.[12] An attempt to convert the preempted claim to one sounding in the federal common law of ERISA is futile. As observed by our Court of Appeals in *Sargent v. Holland,* 114 F.3d 33, 37 (4th Cir.1997), "this circuit has repeatedly rejected efforts to have oral statements override the written terms of ERISA benefit plans." *See also,*

*e.g., White v. Provident Life & Acc. Ins. Co.,* 114 F.3d 26, 29 (4th Cir.1997); *Bakery & Confec. Union & Indus. Int'l Pension Fund v. Ralph's Grocery Co.,* 118 F.3d 1018, 1027 (4th Cir.1997); *HealthSouth Rehab. Hosp. v. American Nat. Red Cross,* 101 F.3d 1005, 1010 (4th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 2432, 138 L.Ed.2d 194 (1997); *Coleman v. Nationwide Life Ins.,* 969 F.2d 54, 58–59 (4th Cir.1992), *cert. denied,* 506 U.S. 1081, 113 S.Ct. 1051, 122 L.Ed.2d 359 (1993). Moreover, "[e]quitable estoppel principles, whether denominated as state or federal common law, have not been permitted to vary the written terms of a plan." *Coleman,* 969 F.2d at 58–59. That is precisely the result sought here by Mrs. Gardner, but it is foreclosed by circuit precedent. Indeed, ERISA, and the plans it regulates, are designed to be the vehicles in which all such disputes are settled. Accordingly, as to these claims, the Court **DENIES** Plaintiff's motion for summary judgment and **GRANTS** Defendants' motions for summary judgment.

### III. CONCLUSION

Based upon the foregoing, the Court **DENIES** Plaintiff's motion for summary judgment, **GRANTS** both DuPont's and CGLI's motions for summary judgment, and **ORDERS** this case dismissed and stricken from the docket.

---

**11.** The Summary Plan Description has a section entitled "If You Are Disabled" that states, in relevant part:

> If you are terminated because of total and permanent disability, your contributory insurance continues according to how much service you have.
>
> .     .     .     .     .
>
> If you have less than 15 years service, your coverage will be cancelled at the time your employment terminates because of your disability. . . .

Ex. 2, Def.'s Mot., at 8.

**12.** Previously, Mrs. Gardner had raised these claims under state law. The Court has already held such claims are preempted by ERISA. *See* Mem. Op. and Order (April 18, 1997).