**Grant R. OFFENBERG, Plaintiff,**

**v.**

**OLIN CORPORATION LONG–TERM DISABILITY PLAN, et al., Defendants.**

**Civil Action No. 6:96–1908.**

United States District Court, S.D. West Virginia, Parkersburg Division.

May 20, 1998.

Larry L. Skeen, Ripley, WV, for Plaintiff.

Robert M. Steptoe, Jr., Steptoe & Johnson, Clarksburg, WV, Rodney L. Bean, Steptoe & Johnson, Morgantown, WV, for Defendants.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending are the parties' cross motions for summary judgment. After careful consideration, the Court **GRANTS** Plaintiff's motion and **DENIES** Defendants' motion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Grant R. Offenberg was a full-time salaried employee of Defendant Olin Corporation. He worked approximately 20 years for Olin in positions ranging from maintenance supervisor to temporary buyer. Offenberg alleges he became unable to work in April 1993 because of severe pain in his back and legs. He suffers from a back condition that has required two surgeries performed by his neurosurgeon, Dr. Charles Loar. Dr. Loar is the sole opining physician who has treated Offenberg's back condition.

In August 1993, Offenberg sought disability benefits from Olin, the administrator of the Olin Long Term Disability Plan. Offenberg asserts he is disabled within the meaning of the Plan. Claims arising under the Plan are investigated and processed by Defendant UNUM Life Insurance Company of America pursuant to a claim administration agreement with Olin.

The Plan contains the necessary qualifications for one to secure long term disability (LTD) benefits. It provides as follows:

- *For the first two-years payments* —the employee must be unable to perform the essential duties of his/her regular occupation. In addition, the employee must be prevented from or incapable of performing a comparable position that has been offered to the employee.
- *After two years* —the employee must be approved for Social Security Disability benefits [1] and, as determined by Olin, be unable to perform or be trained for any job for which the employee is reasonably suited (based on education, training or experience).

Note, an employee may still be denied LTD benefits if we do not consider him/her disabled within the meaning of the LTD Plan even though he/she may be receiving Social Security Disability benefits or may be considered "disabled" by the U.S. Social Security Administration.

Ex. 4, Defs.' mot. for summ. jgt. (hereafter Defs.' ex. ____).

The Olin plan administrator is vested with substantial power to determine benefit eligibility. An amendment to the Plan effective November 1, 1992 provides as follows:

Olin Corporation will serve as the Plan Administrator, and as such, *shall have full and final discretionary authority to determine an individual's eligibility under the Plan and the amount, if any, of benefits payable hereunder and to otherwise interpret and administer such Plans.*

*Id.* (emphasis added).[2]

Offenberg was offered the temporary buyer position, a sedentary job, when he began suffering pain. He ceased work April 6, 1993, however, because of continuing, debilitating pain. He then suffered a heart attack in August 1993.[3] Offenberg applied to the Plan for disability benefits just days after his heart attack. He was awarded benefits effective November 10, 1993 and benefits were awarded for over two years.

After two years elapsed, Offenberg was required to meet the heightened eligibility standards for continued coverage. Previously, he attempted to return to his duties but, again, his pain precluded continued work. Defendants nonetheless concluded he did not meet the tighter Plan eligibility standards for continued coverage, stating "we find no medical evidence of any physical disability severe enough to render you totally disabled. Therefore, your claim will be terminated effective November 30, 1995." Defs.' ex. 7.

Offenberg (1) appealed the decision through appropriate channels; (2) was permitted to submit additional medical evidence; and (3) had his file evaluated by an additional

---

1. Offenberg's application for Social Security benefits was approved well prior to this litigation.

2. The subsequent Summary Plan Description, apparently issued in August 1995, stated similarly as follows:

    The Plan Administrator has absolute authority to interpret the terms of the Plan and to determine any and all matters arising under the Plan or in connection with its administration, including, without limitation, questions concerning eligibility for, and entitlement to, Plan benefits.

    Defs.' ex. 5.

3. Offenberg concedes his heart attack did not permanently disable him.

physician. Nonetheless, the denial of benefits was affirmed. This action followed.[4]

The parties' current briefing presents a second occasion for the Court to consider their respective positions seeking summary judgment. Defendants moved for summary judgment on September 22, 1997. Offenberg's response to the motion asserted the administrator improperly denied him the opportunity to submit objective medical evidence in support of his claim. Bound by the strictures of *Rule 56, Federal Rules of Civil Procedure,* the Court denied Defendants' motion without prejudice and remanded the case for consideration of the evidence Offenberg attempted allegedly to proffer earlier.

Offenberg's additional evidence was received and review has been completed. The administrator also obtained a complete review of Offenberg's claims file by yet another physician. On January 12, 1998 the Plan Administrator rendered a final determination granting Offenberg an additional six weeks of disability payments based on his surgery of November 1995, stating in part:

Based upon the additional medical information it was determined that Mr. Offenburg did experience a change in his condition around September 27, 1995. Our on site physician noted that with the onset of acute radiculopathy it is reasonable that Mr. Offenburg did not have sedentary work capacity until after this surgery in November 1995. The physician noted that following surgery there would be a expected recovery period of 6–8 weeks during which Mr. Offenburg would have had no work capacity. At the end of the 6–8 week time frame, Mr. Offenburg would have been expected to have regained sedentary work capacity and would continue to progress over the next 1–2 months to regain light duty work capacity.

After January 9, 1996 the medical records do not support the inability to perform a sedentary occupation. Since the position

of Temporary Buyer is sedentary in nature Mr. Offenburg would not be precluded from continuing to work in this position or another sedentary position for which he was reasonably suited based upon training, education and experience.

*Id.*

## II. DISCUSSION

### A. Standard of Review

Our Court of Appeals has often stated the settled standard and shifting burdens governing the disposition of a motion for summary judgment:

Rule 56(c) requires that the district court enter judgment against a party who, "after adequate time for . . . discovery fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial,". To prevail on a motion for summary judgment, the [movant] must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) it is entitled to judgment as a matter of law. In determining whether a genuine issue of material fact has been raised, we must construe all inferences in favor of the [the nonmovant]. If, however, "the evidence is so one-sided that one party must prevail as a matter of law," we must affirm the grant of summary judgment in that party's favor. The [nonmovant] "cannot create a genuine issue of fact through mere speculation or the building of one inference upon another," To survive [the motion], the [nonmovant] may not rest on [his] pleadings, but must demonstrate that specific, material facts exist that give rise to a genuine issue. As the *Anderson* Court explained, the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff[.]"

**4.** Offenberg brought this action originally alleging state law claims and seeking (1) a declaratory judgment under the West Virginia Declaratory Judgments Act; and (2) punitive and compensatory damages. The Court granted in part Defendants' motion to dismiss on, *inter alia,* preemption grounds. *Offenberg v. Unum Life Ins. Co. of*

*Am.,* 6:96–1908 (S.D.W.Va. Feb. 4, 1997). Offenberg, however, was allowed to amend his complaint (1) to allege a claim pursuant to 29 U.S.C. § 1132(a)(1)(B); and (2) to name the proper parties Defendant. *Id.* Offenberg amended, alleging a claim pursuant to 29 U.S.C. § 1132(a)(1)(B).

*Harleysville Mut. Ins. Co. v. Packer,* 60 F.3d 1116, 1119–20 (4th Cir.1995) (citations omitted); *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.), *cert. denied,* 513 U.S. 813, 115 S.Ct. 67, 130 L.Ed.2d 24 (1994); *see also Cabro Foods, Inc. v. Wells Fargo Armored Serv. Corp.,* 962 F.Supp. 75, 77 (S.D.W.Va.1997); *Spradling v. Blackburn,* 919 F.Supp. 969, 974 (S.D.W.Va. 1996).

"At bottom, the district court must determine whether the party opposing the motion for summary judgment has presented genuinely disputed facts which remain to be tried. If not, the district court may resolve the legal questions between the parties as a matter of law and enter judgment accordingly." *Thompson Everett, Inc. v. National Cable Advertising, L.P.,* 57 F.3d 1317, 1323 (4th Cir.1995). In the context of a denial of benefits under ERISA, there is a further overlay on the *Celotex* trilogy, one this Court has revisited often.

■ The standard of judicial review for a decision made by an administrator of an ERISA benefit plan generally is *de novo. Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Richards v. UMWA Health & Retirement Fund,* 895 F.2d 133, 135 (4th Cir.1990); *de Nobel v. Vitro Corp.* 885 F.2d 1180, 1186 (4th Cir.1989); *Sargent v. Holland,* 925 F.Supp. 1155, 1158 (S.D.W.Va.1996). Where the plan gives the administrator discretion to determine benefit eligibility or to construe plan terms, however, the standard of review is whether the administrator abused its discretion. *Firestone,* 489 U.S. at 111, 109 S.Ct. 948; *Sedlack v. Braswell Servs. Group, Inc.,* 134 F.3d 219, 223–24 (4th Cir.1998); *Brogan v. Holland,* 105 F.3d 158, 161 (4th Cir.1997); *Bedrick v. Travelers Ins. Co.,* 93 F.3d 149, 152 (4th Cir.1996); *Bernstein v. CapitalCare, Inc.,* 70 F.3d 783, 787 (4th Cir.1995); *Doe v. Group Hospitalization & Med. Servs.,* 3 F.3d 80, 85 (4th Cir.1993).[5]

Under the abuse of discretion standard, if an administrator's decision is supported by substantial evidence, and is in accordance with the law, it must be sustained even if the Court believes that substantial evidence also supports a contrary result. *See Consolo v. Federal Maritime Comm'n,* 383 U.S. 607, 619, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966); *Hamrick v. Schweiker,* 679 F.2d 1078, 1082 (4th Cir.1982); *Brogan v. Holland,* 908 F.Supp. 363, 370 (S.D.W.Va.1995), *aff'd,* 105 F.3d 158 (4th Cir.1997). Some factors for consideration in examining the exercise of discretion include:

"[1] [W]hether the administrator's interpretation is consistent with the goals of the plan; [2] whether it might render some language in the plan documents meaningless or internally inconsistent; [3] whether the challenged interpretation is at odds with the procedural and substantive requirements of ERISA itself; [4] whether the provisions at issue have been applied consistently; and of course [5] whether the fiduciaries' interpretation is contrary to the clear language of the [p]lan. The dispositive principle remains, however, that where plan fiduciaries have offered a reasonable interpretation of disputed provisions, courts may not replace [it] with an interpretation of their own—and therefore cannot disturb as an abuse of discretion the challenged benefits determination."

*Sheppard & Enoch Pratt Hosp., Inc. v. Travelers Ins. Co.,* 32 F.3d 120, 126 (4th Cir.1994) (quoted authority omitted); *Gardner v. E.I. Du Pont de Nemours & Co., Inc.,* 978 F.Supp. 667, 671 (S.D.W.Va.1997).

There are compelling reasons for the Court of Appeals' "narrow standard of review[,]" not the least of which is that it " 'ensure[s] that administrative responsibility rests with those whose experience is daily and continual, not with judges whose expo-

---

**5.** While *de novo* review is inappropriate when reviewing an administrator's exercise of discretion, it is appropriate in resolving two questions of contractual interpretation and performance: (1) whether the plan confers discretion upon the administrator to make the decision at issue; and (2) whether the administrator's decision falls within the scope of discretion conferred.

*Haley v. Paul Revere Life Ins. Co.,* 77 F.3d 84, 89 (4th Cir.1996). Here, both prongs are satisfied because the Plan specifically gives the administrator complete discretion to determine an individual's eligibility for benefits. The Court thus reviews the administrator's decision to deny Offenberg benefits under an abuse of discretion standard.

sure is episodic and occasional.'" *Brogan*, 105 F.3d at 164.

### B. Analysis

■ The Court has reviewed the entire record upon which the administrator based its benefits-denial decision. The record is comprised primarily of reports and records generated by three physicians: (1) Dr. Gonpat Thakker; (2) Dr. James Gaal; and (3) Dr. C.R. Loar. Two considerations are important to the Court. First, Offenberg asserts, and Defendants do not dispute seriously, neither Thakker nor Gaal treated him for any of his back problems. Second, while some of the physicians' reports leave room for interpretation, Offenberg's treating neurosurgeon consistently maintained the same opinion of disability for four years. A sampling of the conflicting medical evidence follows.

Dr. Thakker surmised in April 1995 that Offenberg's prognosis for recovery and for return to sedentary work was "good." Defs.' Ex. 22. It is clear, however, Thakker's decision was based upon Offenberg's heart condition, as Thakker appears to have been primarily, if not wholly, concerned with the latter.

While some questions originally lingered concerning Dr. Gaal's findings,[6] his opinion of Offenberg's back condition is now clear. Dr. Gaal stated in a September 1995 letter that he unequivocally considered Offenberg "disabled from employment." Defs.' ex. 30.[7]

Chief in importance among the opining medical professionals, however, is Dr. Loar, who was the treating physician for Offenberg's back condition. There are numerous, consistent letters and treatment notes in the record over a long period of time disclosing Dr. Loar's view that Offenberg was totally disabled from employment. *See, e.g.,* Defs.' ex. 16 (report of April 1993 stating "I doubt that he will ultimately be able to return to his job ... even with severe limitations."); *id.* (report of June 10, 1993 stating "I think it is highly unlikely that he will return on a regular basis to his previous employment."); Defs.' ex. 19 (physical capacities evaluation form of March 1995 stating, *inter alia,* Offenberg could work neither full nor part time); Defs.' ex. 29 (letter of September 1995 stating "It is my feeling that Mr. Offenberg is unable to return to his previous employment.")[8]; Defs.' ex. 39 (letter of December 1995 stating "I would consider Mr. Offenberg at the present time to be permanently and totally disabled.").

Based on the record, the only reasonable conclusion is that Offenberg is disabled under the Plan. The administrator's decision to the contrary is neither reasonable nor supported by substantial evidence. By example, one of the plan physicians, Dr. Michael Totta,

---

**6.** Some inconsistent statements by Dr. Gaal can be culled from the record:

- In a 1994 letter, he stated Offenberg's "prognosis regarding eventual return to work is poor." Defs.' ex. 15. Just one sentence later, however, he stated Offenberg "could not go back to work *at his previous capacity.*" *Id.* (emphasis added).
- In an April 1995 report, Dr. Gaal noted (1) there were no functional limitations or physical restrictions, besides some shortness of breath on exertion, that would "impede the patient's ability to perform his/her *own* job or *any* job (commensurate with patient's skills/experience[;]" and (2) that Offenberg could (a) sit, stand and walk four hours each in an eight hour work day; (b) occasionally lift up to twenty-five pounds; (c) occasionally bend, stoop, squat, kneel, climb stairs, crawl, reach above his shoulders and walk on uneven surfaces; and (d) use his hands and feet for repetitive actions.) Nonetheless, Dr. Gaal surmised Offenberg could not work part time.

- When the Plan attempted to clarify the inconsistencies in the April 1995 report, its agents were told by Dr. Gaal's office to assume he agreed with Dr. Thakker.

**7.** It is true a later, November 1995 letter from Dr. Gaal states Offenberg "*could be* disabled from the back problems that he has." Defs.' ex. 37 (emphasis added). Read in context, however, the letter demonstrates Dr. Gaal was not expressing doubts about Offenberg's disability. Rather, he was merely referring the recipient of the letter to Dr. Loar for more information about Offenberg's current condition. This further illustrates Dr. Loar's primacy concerning the back condition.

**8.** Dr. Loar felt strongly enough about his conclusion to send a follow-on letter just days later reiterating his view that Offenberg "should be considered totally and permanently disabled." Defs.' ex. 32.

never met nor, much less, examined Offenberg. Nonetheless, his comparatively conclusory opinion would lead one to believe he had conducted a complete physical and mental evaluation of the claimant: "What is most likely limiting this gentleman's function is a combination of *inappropriately magnified* illness behavior in response to undoubted low back pain along with *enabling interactions* with his physician." Defs.' ex. 41 (emphasis added).[9] The record simply does not support Dr. Totta's jaded, and professionally discourteous, opinion of Offenberg's condition.

In sum, the record is overwhelmingly favorable to a disability finding; the medical evidence demonstrates that is the only reasonable result.[10]

## III. CONCLUSION

The Court has applied the *Firestone* calculus many times and is mindful of the extraordinarily generous standard of review applicable to Defendants' discretionary disability determination. Indeed, two of the Court of Appeals' most recent decisions affirming benefit denials emanated from this Court. *Sargent v. Holland,* 114 F.3d 33 (4th Cir.1997); *Brogan v. Holland,* 105 F.3d 158 (4th Cir. 1997).[11] Nonetheless, the administrator's determination is not supported by substantial evidence and must be reversed.

Accordingly, the Court **DENIES** Defendants' motion for summary judgment and

**GRANTS** Plaintiff's motion for summary judgment. Absent resolution of the issue amongst the parties, Plaintiff may file an appropriate fee petition pursuant to 29 U.S.C. § 1132(g)(1) and *Rule* 54(d)(2), *Federal Rules of Civil Procedure.*[12] This case is **DISMISSED** and stricken from the docket.

---

9. The Plan makes much of Offenberg's candid admissions in both 1993 and 1995 that he occasionally went fishing and hunting. These very limited physical activities, however, do little, if anything, to support the Plan's denial of benefits, especially when measured against Dr. Loar's consistent findings.

10. Offenberg asserted other arguments in support of his position. The Court need not address those alternative arguments, however, given its disposition on the main matter in controversy.

11. Our Court of Appeals has yet to decide whether the "arbitrary and capricious" standard previously used by the Fourth Circuit is synonymous with the "abuse of discretion" standard adopted in *Firestone.* It has observed several times, however, any difference between the two standards is typically insignificant. *See, e.g., Brogan,* 105 F.3d at 161 n. 3; *Sheppard,* 32 F.3d at 125 n. 4 ("[W]e believe the result would be the same whether the abuse of discretion standard and the arbitrary and capricious standard are the same

or not; therefore, we likewise need not resolve [the] issue [of whether the arbitrary and capricious standard is still viable after *Firestone* ]."). The Court observes this case involves a clear error of judgment that would typically be considered arbitrary and capricious.

12. Plaintiff's fee petition, if any, should, at a minimum, (1) provide dates work was performed, (2) a reasonable description of the work, (3) time expended on the work, and (4) an affidavit or affidavits showing the requested hourly rate is reasonable. Further, pursuant to *Rule* 54(d)(2)(B), the petition "shall also disclose the terms of any agreement with respect to fees to be paid for the services for which claim is made." *Id.* In preparing the petition, counsel is encouraged to refer to this Court's decision in *Continental Casualty Co. v. Assicurazioni Generali, S.P.A.,* 903 F.Supp. 990 (S.D.W.Va.1995) and other relevant precedent from the Court of Appeals.