Dudley **MARSTELLER, III, Plaintiff,**

v.

**LIFE INSURANCE COMPANY OF NORTH AMERICA, et al., Defendants.**

**No. Civ.A. 96–0015–C.**

United States District Court, W.D. Virginia, Charlottesville Division.

Aug. 26, 1998.

Denise Yvette Lunsford, Denise Y. Lunsford, P.C., Charlottesville, VA, for Dudley Marsteller, III, plaintiff.

Douglas Andrew Lines, Powell & Arrighi, Richmond, VA, for Life Insurance Company of North America, defendant.

James W. Morris, III, Kirk David McQuiddy, Morris and Morris, P.C., Richmond, VA, for Group Long–Term Disability Plan of A.G. Edwards & Sons, Inc., A.G. Edwards, Inc., defendants.

## MEMORANDUM OPINION

MICHAEL, Senior District Judge.

Plaintiff appeals to this court for the second time after the administrator of the Group Long–Term Disability Plan of A.G. Edwards & Sons., Inc. ("the Plan") again denied benefits upon remand from this court. As in the first instance, the court referred this long-term disability claim under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, to the Honorable B. Waugh Crigler, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for proposed findings of fact and a recommended disposition, subject to review by this court. On June 25, 1998 the Magistrate Judge filed his Report and Recommendation, denying defendants' motion for summary judgment as to Count I,[1] and granting plaintiff's motion for summary judgment, made orally at a June 18, 1998 hearing on defendant's motion for summary judgment before the magistrate judge.

Defendant Life Insurance Company of North America ("LINA") filed Objections to the Report and Recommendation on July 6, 1998. Defendant A.G. Edwards, Inc. and Group Long Term Disability Plan of A.G. Edwards & Sons, Inc. filed its Objections on July 8, 1998. Said objections having been timely and appropriately lodged, this court must undertake a *de novo* review of the case. *See Orpiano v. Johnson,* 687 F.2d 44, 48 (4th Cir.1982). After a thorough examination of the parties' objections, the supporting memoranda, the applicable law, the documented record, and the Report and Recommendation itself, this court finds defendants' objections well-taken and declines to adopt the Report and Recommendation, filed June 25, 1998.

### I. FACTUAL AND PROCEDURAL BACKGROUND

The plaintiff, Dudley Marsteller, III, was employed as a stock broker by Edwards from August 1993 to March 24, 1994, at which time he was terminated for misappropriating funds, making unauthorized trades, and engaging in other unacceptable business practices. His last day of active duty, however, was March 3, 1994, after which time he was placed on compliance leave until March 24, 1994. Edwards maintains and sponsors the Plan, which is governed by ERISA under 29 U.S.C. § 1002(1), (3). LINA funds the Plan and pays out benefits for the Plan. Plaintiff, who has various psychiatric disorders and currently receives social security disability benefits, applied for but was denied benefits to which he claims he is entitled under the Plan.

After this court's July 9, 1997 opinion and order granting summary judgment as to Count II of the original complaint and remanding to the Plan administrator (LINA) as to Count I, LINA again denied plaintiff's claim to benefits. On January 15, 1998, the court granted plaintiff's motion for review. The remaining count of the complaint alleges that defendants abused their discretion in denying him disability payments (Count I). This case arises under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* Jurisdiction is conferred by 29 U.S.C. § 1132(a).

The court's decision to remand on Count I was premised on the concern that the evidence plaintiff offered on judicial review[2] might have changed the outcome of the determination of disability had it been considered by the Plan administrators. The issue now before the court, therefore, is whether, upon remand, the renewed determination to deny benefits was an abuse of discretion or whether it took into account the evidence offered on judicial review and all other available evidence and made a reasoned decision.

### II. DISCUSSION

#### A. Standard of Review

 As noted in the first Report and Recommendation in this case, where a bene-

---

1. The court's previous disposition in this case granted defendants' motion for summary judgment as to Count II, the only other count in the complaint, and remanded the case to the plan administrator for further proceedings in which parties from both sides were entitled to present additional evidence for consideration by the administrator.

2. This evidence consists of documents from Dr. Michele K. Nelson, one of Marsteller's treating psychiatrists.

fits plan grants its administrators discretionary power to determine eligibility, the court reviews such determinations under a deferential standard of review. *See Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), *Sheppard & Enoch Pratt Hosp. v. Travelers Ins. Co.,* 32 F.3d 120, 125 (4th Cir.1994). The deferential standard of review guides the court to find a decision by a plan administrator reasonable "if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Bernstein v. CapitalCare, Inc.,* 70 F.3d 783, 788 (4th Cir.1995).

 In determining whether a plan administrator's denial of benefits was reasonable, courts consider a number of factors.[3] *See Sheppard & Enoch Pratt Hosp.,* 32 F.3d at 126. It is *not* unreasonable, however, for a plan administrator to give greater weight to its own consultants' determinations than to the recommendations of the beneficiary's own doctor. *See id.* Deference is due even if the plan administrator's medical consultant "relied exclusively on 'cold' medical records and reports," rather than opinions of doctors who treated the beneficiary first-hand. *Id.* A plan administrator can reasonably rely on conclusions made by such a medical consultant after assessing the judgments of treating doctors. *See id.* In addition, a fiduciary's construction of an ambiguous term should stand unless the interpretation is unreasonable. *See Hickey v. Digital Equipment Corp.,* 43 F.3d 941, 945–46 (4th Cir. 1995).

This court has already held that the plan here at issue indisputably vests sole discretion in LINA, the fiduciary. Therefore, review proceeds under the deferential standard of review set forth in *Firestone* and *Sheppard.* Because the fiduciary considered all relevant information—as instructed by the disposition ordering remand—its determination is entitled to deference and the defendants' motion for summary judgment will be granted.

### B. Analysis

In conducting its determination of benefits after the remand, LINA reviewed all additional evidence as ordered by the court's disposition. *See* Def.Ex. A at ¶ 5 (describing contents of the Marsteller file as including "additional documentation submitted by Mr. Marsteller's attorney" and specifically listing several documents from psychiatrist Nelson). In addition, LINA commissioned an independent review of the file by a medical consultant, Edward A. Peck, III, Ph.D. Dr. Peck concluded that Marsteller was not disabled for work on March 3, 1994, when he was placed on leave. He reached this conclusion after reviewing all records available as of September 16, 1997, which included the documents and records of Dr. Nelson.

Review of the entire Marsteller file, including the information which the court directed LINA to consider and the assessments by Dr. Peck, was conducted by Jana M. Larsen, an agent of LINA who had not been involved in the pre-remand determination of eligibility.[4] On behalf of LINA, Larsen determined on February 9, 1998 that the denial of benefits to Marsteller should be reaffirmed.

Plaintiff's response to LINA's motion for summary judgment fails to address in any significant way the extent to which the reconsideration by LINA followed the guidance of the court's decision to remand. Instead, plaintiff rehashes the arguments made the first time this case came before this court. Plaintiff refers to the same evidence available to the court previously, which has now been reviewed and considered by LINA on remand. *See* Memo at 14. Plaintiff faults Dr. Peck for failing to "contact Marsteller's care providers personally," and alleges without proof that Dr. Peck "rubber stamped the

---

**3.** The *Sheppard* court listed the following factors: "whether the administrator's interpretation is consistent with the goals of the plan; whether it might render some language in the plan documents meaningless or internally inconsistent; whether the challenged interpretation is at odds with the procedural and substantive requirements of ERISA itself; whether the provisions at issue have been applied consistently; and of course whether the fiduciaries' interpretation is contrary to the clear language of the plan." *Sheppard,* 32 F.3d 120, 126.

**4.** Brian Gallagher and Linda Galloway were the LINA employees involved in the initial denial of benefits.

determination previously made by LINA employees." Memo at 15.

■ Plaintiff concedes that LINA's review on remand took into consideration all additional information filed by plaintiff with this court that was at issue in the court's first determination of this case. *See* Memo at 14–15. Plaintiff's only complaint is that the review, which included expert medical consultation, did not include personal contact with plaintiff's treating physician. As the Fourth Circuit held in *Sheppard,* however, this court must defer to LINA's determination even if it accorded its own medical consultant's opinion more weight than the opinion of Marsteller's doctor. Furthermore, the *Sheppard* holding makes clear that LINA's agents were not required to personally contact Marsteller's doctor, Dr. Nelson, as suggested by plaintiff. LINA took reasonable care to ensure that its most recent determination of eligibility was fair and based on substantial evidence.

■ Plaintiff's main argument throughout has been that the subsequent clarifications by Dr. Nelson of her own treatment notes made around the time Marstellar was placed on leave should be given controlling weight. Nelson's notes from her treatment contemporaneous with Marsteller's dismissal refer to her advice to him to keep working and to look for other employment. The fact that the Plan administrator gave greater weight to the plain meaning of Nelson's notes than her subsequent explanations made long after the relevant treatment and in an effort to help her patient obtain benefits does not lead this court to overrule that determination under a deferential standard of review.

■ The Magistrate Judge's Report and Recommendation urges that this ERISA claim be handled in the same manner as social security disability benefits claims because the two types of claims are analogous. However, in the social security realm very specific regulations set forth the manner in which medical opinions about disability are to be evaluated. *See* 20 C.F.R. § 404.1526. These regulations mandate that greater weight be given to treating physicians opinions in social security disability cases than the opinions of other doctors. No such regulations according greater weight to treating physicians exist in the ERISA realm. The only similarity between this claim and social security claims is that both involve a claim of disability benefits. The definitions of disability and the manner used in determining disability are completely different in the two kinds of cases. Therefore applying the social security guideline regarding the proper weight accorded treating physicians' opinions is inappropriate in this case.

The single case cited by the Report and Recommendation in support of the principle that treating physicians' opinions are entitled to great weight never states that principle. *See Offenberg v. Olin Corporation Long–Term Disability Plan,* 6 F.Supp.2d 554 (S.D.W.Va.1998). Rather, in *Offenberg,* Judge Haden found that the physicians' reports comprising the record in the case contained conflicting statements. The *Offenberg* court found that in the case of that particular plan and that particular disability, the only reasonable conclusion was that of the treating physicians rather than the "comparatively conclusory" and "professionally discourteous" opinion of the plan's physician. *See Offenberg,* 6 F.Supp.2d at 559. Judge Haden's opinion in *Offenberg* does not direct any change in the standard of review in ERISA cases claiming disability under a plan that gives the administrator discretion to determine benefit eligibility. In fact, Judge Haden emphasized that the *Firestone* calculus still applies and that it directs that the court use an "extraordinarily generous standard of review" in such cases. Judge Haden simply found that in that particular case, the administrator's determination was not supported by substantial evidence and therefore had to be reversed. *See id.*

*Offenberg* can be distinguished from this case on many grounds, including the relevant definitions of disability in the respective plans and the type of disability involved (physical versus psychiatric). While, there is also conflicting evidence in Marsteller's case, the two sides of the conflict are not so clearly the treating physicians versus the plan physicians. Instead, one of the treating physicians, Dr. Nelson, made statements after the

fact that contradict her own notes made around the time Marstellar was placed on leave. Another treating physician set the date of disability after Marstellar had been placed on leave. The independent consultant hired by the plan analyzed these discrepancies and came to a conclusion ultimately accepted by the Plan administrators.

In reviewing Marsteller's claim prior to remand, LINA administrators had the following evidence before them: (1) statement of Dr. Rochelle Klinger, one of plaintiff's treating psychiatrists, that the day of plaintiff's disability was March 25, 1994; (2) a Social Security Administration Notice of Disapproved Claims dated April 14, 1995 (forwarded by plaintiff); (3) Edwards' representation that plaintiff was not fired because of a disability; (4) information in plaintiff's file indicating that he had been plagued with disorders since 1991, but had been able to work. On remand, the treatment notes of Dr. Nelson were supplemented by an affidavit by Dr. Nelson stating that Marstellar had the same mental condition on March 3, 1994 when he was placed on leave as he did on March 24, 1994 when he was finally dismissed. However, Dr. Nelson's notes indicated that plaintiff could work from March 3, 1994, to early April 1994. According to the notes, Dr. Nelson believed working would provide plaintiff with stability and would help his condition.

Under the Plan, an employee is entitled to benefits if the employee becomes disabled while a member of the Plan. *See* LINA's Motion for Summary Judgment at p. 9, ¶ 4.1. An employee's participation ceases when an employee's "active service" ends, except if the employee's active service ends because of a qualifying disability. *Id.* at p. 8, ¶ 3.4(4). Active service means performance of one's regular duties of work on a full-time basis. *Id.* at p. 7, ¶ 1.1. A disability within the meaning of the Plan is an injury or sickness that renders the employee unable to perform *all material duties* of his regular occupation. *Id.* ¶ 1.4 (emphasis added).

With these Plan definitions in mind, it was not unreasonable for Plan administrators to accept the opinion of one treating physician and consultant Dr. Peck that Marsteller was disabled only as of March 24, 1998 rather than March 3, 1994 when his active service ended. The Plan's narrow definition of disability, and the administrator's interpretation of that definition, must also be used when reviewing the determination that Marsteller was not disabled. The record shows that Marsteller continued to do well in the stock market as of May 3, 1994, long after he had been dismissed from his job as a stock broker. Because (1) the Plan's definition of disability requires that an employee be unable to perform "all material duties," and (2) Marsteller continued to perform one of his job duties as a stock broker outside of the context of his job even after he had been dismissed, and (3) because he was dismissed for reasons other than his disability, it was not unreasonable for the Plan administrators to deny his claim.[5]

## III. CONCLUSION

This court finds that substantial evidence in the record supports the Plan administrator's finding of no disability under the plan's definition of disability, notwithstanding Dr. Nelson's statements after the initial denial that she considered Marsteller disabled according to her own understanding of that term as of the date he was placed on leave. Because there is no dispute as to any material facts, but only as to the legal question of

5. In addition to its objection to the Magistrate's Report and Recommendation for giving controlling weight to Dr. Nelson's subsequent statements that Marsteller was disabled at the time of his dismissal, LINA objects to the Magistrate's recommendation that the plaintiff's oral motion for summary judgment made at the hearing should be granted. Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate when "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Rule 56(c) also directs that any motions for summary judgment "be served at least 10 days before the time fixed for the hearing." Defendant LINA is correct to point out that under the technical strictures of Rule 56, plaintiff's motion was out of time. However, this court need not reach the question of whether plaintiffs can make an oral motion for summary judgment at a hearing on defendant's motion for summary judgement because of its decision to grant defendants' motion for summary judgment.

whether the Plan administrator's decision was reasonable, granting summary judgment in favor of defendants is appropriate in this case. An appropriate Order shall this day issue.